Hillsborough
No. 86-241

THE STATE OF NEW HAMPSHIRE

v.

EDWARD D. HUMPHREY, SR.

August 17, 1987

*Stephen E. Merrill,* attorney general (*Bradford W. Kuster,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, appellate defender, of Concord, by brief for the defendant.

SOUTER, J.   In this appeal from his armed robbery conviction, the defendant claims that the Superior Court (*Bean*, J.) erred in admitting evidence that two eyewitnesses to the crime had identified him as the robber by selecting his picture from each of two photographic arrays. We affirm.

On November 2, 1983, an unmasked man carrying a shotgun entered the lighted office of Bergeron's Arco Station in Nashua and ordered Richard Bergeron to hand over the contents of the cash register. Bergeron complied and watched with his co-worker, Gary Bathalon, as the robber attempted to disable the station's two telephones before leaving.

Bergeron later described the robber as in his twenties, six-feet two-inches tall, weighing one hundred sixty or seventy pounds; with dirty blond hair over his ears and fingernail marks in the area of his jaw. Bathalon described him as six-feet-three to six-feet-five, one hundred seventy to one hundred seventy-five pounds, with light brown curly hair and some scratch marks on his neck. They were then shown an array of six photographs, from which each separately chose the defendant's picture. Each expressed a "seventy percent" degree of confidence in the correctness of his choice, and each indicated that the subject of the photograph had longer hair than the robber's, and a mustache, which the robber did not. After Bathalon made his selection, he asked a police detective if the subject had perpetrated an earlier robbery of the same filling station; the detective answered yes. Each witness then separately gave information that formed the basis for a composite drawing of the robber prepared by a police technician.

Two days later, after the defendant had been apprehended in Rhode Island, the victims were separately shown a fresh array of five pictures containing a new police photograph of the defendant taken upon his arrest. Each selected the defendant's photograph with a stated certitude of one hundred percent.

The defendant nowhere cites the legal basis for his motion to suppress the photographic identifications, but from his reliance on federal cases, *e.g.*, *Foster v. California*, 394 U.S. 440 (1969), and State cases applying federal standards, *e.g.*, *State v. Heald*, 120 N.H. 319, 414 A.2d 1288 (1980); *State v. Ober*, 116 N.H. 381, 359 A.2d 624 (1976), we infer that he means to raise a due process claim under the fourteenth amendment of the Constitution of the United States. *Cf. State v. Cross*, 128 N.H. 732, 734, 519 A.2d 272, 274

(1986) (objection based on claim of prejudice exceeding probative value). In any event, he raises no State constitutional or legal basis for his appeal.

■■ Following a challenge to the admissibility of an out-of-court identification, the trial court must determine whether the identification procedure was unnecessarily suggestive in pointing to the defendant and, if so, whether that suggestiveness rendered the identification unreliable. *State v. LaRose*, 127 N.H. 146, 150, 497 A.2d 1224, 1229 (1985). The burden to prove unnecessary suggestiveness rests on the defendant, *id.*, and the trial judge correctly found that the defendant did not satisfy that burden in this case.

The defendant attacks the first array because the six subjects are posed against horizontal height lines indicating that only the defendant is over six feet, and because the date shown on the defendant's photograph is close to that of a prior robbery of the same Arco station a year before. The weakness of the first argument inheres in the use of six separate photographs, rather than a line of subjects in a single picture. We know from our own experience in examining the photographs in question that one naturally looks to the faces, not to the lines behind them, and a viewer would probably not pay much attention to the height indicators. In fact, Bathalon testified that he did not do so, and a police detective testified that Bergeron did not mention height when he made his selection.

The second argument, about the suggestiveness of the date, fails for two reasons. Again, it is natural to look at the faces, not the dates shown below, and there is, in any case, no evidence that either witness knew that anyone had been arrested, or photographed, in the aftermath of the earlier robbery.

The defendant's challenge to the second array rests on four claims. First, the defendant is the only subject shown in both the first and second arrays. But this carries little weight in fact, because the defendant's appearance differs significantly as between the two; the hair is markedly longer in the first, where he is shown with a full mustache. Judging from the photographs alone, we would not have thought they were of the same man. These same facts neutralize whatever significance there might be in the defendant's second claim, that Bathalon's second identification was somehow influenced by the belief that the person he had chosen from the first array had committed an earlier robbery.

The third claim is that only the defendant is shown with scratch marks on his neck. While this is true, a look at the photographs renders it insignificant. The marks are barely perceptible. We did

not notice them on a first look, and the trial judge could reasonably accept Bathalon's testimony that he did not notice them until after his selection. Finally, the defendant claims that he was one of only two curly-haired subjects. We can only say that three of them appear to us to have curly hair, and because all five are shown with hair about the same length and color, there is no obvious distinctiveness pointing to any one subject.

From our examination of the evidence we are satisfied that the trial court could find that neither of the photographic arrays was tainted to the defendant's detriment by unnecessary suggestiveness.

*Affirmed.*

All concurred.