Hillsborough
No. 86-084

THE STATE OF NEW HAMPSHIRE

v.

ROBERT DUFF

October 9, 1987

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, appellate defender, of Concord, by brief for the defendant.

*Robert Duff*, by brief, *pro se*.

THAYER, J. The defendant was convicted after a jury trial of five counts of aggravated felonious sexual assault and one count of kidnapping, RSA 632-A:2 and RSA 633:1. The defendant challenges his convictions on the basis that the Trial Court (*Wyman*, J.) erred in (1) denying the defendant's motion to suppress an out-of-court identification as the product of an unnecessarily suggestive photographic identification array, and (2) permitting evidence of the defendant's threats and acts of violence against the defendant's alibi witness to be introduced at trial. The defendant in his *pro se* brief also alleges that the trial court erred in permitting the prosecution to recall a witness in order to perform an in-court identification of the defendant; that the prosecution engaged in misconduct; and that the defendant suffered from ineffective assistance of counsel. For the reasons that follow, we affirm the convictions.

The female victim was a sixteen-year-old high-school student at the time of the kidnapping and rape. After school on April 15, 1985, she was walking from her grandmother's house in Milford to the McDonald's on Elm Street. Before reaching McDonald's, a man in a blue truck pulled up beside her and asked her for directions to Main Street in Milford. The victim told him he could probably get better directions at her grandmother's store in Milford. She then continued on her journey to McDonald's, where she purchased some food. While the victim was walking back to her grandmother's house, she saw the man she had spoken to earlier standing outside the blue truck. As she walked past him, he grabbed her from behind and said: "I'll blow your brains out if you don't get in the truck." The victim got into the truck. The victim testified at trial that the abduction occurred at approximately 6:00 p.m.

Once the two were in the truck, the man drove from the scene at high speed. He punched the victim twice in the face, and then forced her to perform fellatio on him. The man drove into a wooded area and proceeded to force the victim to submit to two acts of vaginal intercourse and one act of anal intercourse, and to perform another act of fellatio. The man then dropped her off by her aunt's house at approximately 7:25 p.m. The victim gave her aunt a brief

description of the rapist. The aunt then summoned the victim's parents, who in turn took the victim to the Milford police station, where she gave a description of her assailant and his truck. The victim was then taken to the local hospital.

Police officers began an immediate search for a man and vehicle matching the description the victim had given them. At about 8:20 p.m., Milford Police Sergeant Dowd discovered a truck matching the victim's description parked outside 41 West Street in Milford. Officer Dowd radioed for assistance, and another police officer responded. The officers knocked on the door and were allowed entry by the owner. Once inside the apartment, the officers saw four men, one of whom matched the victim's description of her assailant. That man was the defendant, Robert Duff. They asked Duff to step outside, advised him of his *Miranda* rights, and asked him to come to the station for questioning. Once at the station, Duff denied any involvement in the rape committed earlier that evening. "How could I have raped somebody at McDonald's," Duff protested, before anyone had informed Duff that McDonald's was the scene of the abduction. At that point, Duff was arrested.

Detective Conti of the Milford Police Department assembled a photo lineup that consisted of a photograph of the defendant and five other photographs. The five other photos were from the Milford police files, four of these being "mug shots" of uniform background. The fifth was of an indeterminate background. The defendant's photograph had been taken two months earlier at the Hillsborough County House of Correction. The background in this photo was a wire-mesh fence. This photo array was displayed to the victim shortly after midnight, or roughly six hours after the incidents commenced. The victim identified a photograph of the defendant as depicting the man who had raped her.

At trial, the defendant testified that he had spent the day of the assault at the home of one Pamela Mason, and left there about 6:00 p.m. He then went to the home of his girl friend, Elsie Frost. He claimed he stayed at Frost's house until 7:00 p.m. Elsie Frost testified that the defendant had come to her house in Nashua at 6:05 p.m., and had stayed there until 6:45 p.m. On cross-examination, the prosecution elicited testimony from Frost that in 1979 and 1980 the defendant had verbally and physically abused and threatened her.

Two briefs on behalf of the defendant were submitted in this appeal. The first brief was submitted by the public appellate defender. The defendant then filed a *pro se* brief. We shall answer the arguments of the appellate defender first, and then proceed to

the arguments made by the defendant's *pro se* brief to the extent that those arguments are not addressed in the appellate defender's brief.

The appellate defender's first argument is that the trial court erred in admitting evidence of the defendant's violent behavior toward a defense witness that occurred five and six years before the trial. The defense argues that New Hampshire Rule of Evidence 404(b) excludes evidence of prior bad acts to show the character of an individual in order to demonstrate that that person acted in conformity therewith. The defendant also asserts that the danger of unfair prejudice outweighed any probative value.

■ Decisions on the admissibility of evidence rest with the sound discretion of the trial court. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." N.H. R. Ev. 103(b); *cf. State v. Hotchkiss*, 129 N.H. 260, 264–65, 525 A.2d 270, 272 (1987). At trial, the prosecutor claimed that the defendant's previous threats and acts of violence against the defense witness were relevant on the issue of the defense witness' credibility as an alibi witness. New Hampshire Rule of Evidence 611(b) provides that:

> "(b) *Scope of cross-examination.*—A witness may be cross-examined on any matter relevant to any issue in the case, *including credibility.* In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination."

(Emphasis added.) The defendant's threats and physical abuse of the defense alibi witness were highly relevant to the alibi witness' credibility. This history of abuse could reasonably have led the alibi witness to corroborate Duff's story for fear of future harmful harassment from him. Consequently, this abuse was probative of the witness' interest in testifying falsely. *See, e.g., Wells v. State*, 559 P.2d 445, 450 (Okla. 1977) (it was proper and useful for State on cross-examination to inquire into matters which tested alibi witness' bias, prejudice, or interest in the case).

■ The fact that these abusive instances occurred five years before the trial could arguably have detracted from their probative value more than if they had occurred a week before the trial, yet not enough for a finding that the trial court abused its discretion in permitting the prosecution's inquiry. Although the alibi witness' revelation of the defendant's attacks on her were undoubtedly prejudicial, we do not believe the prejudice outweighed the probative value of that testimony on the issue of the witness' cred-

ibility. Additionally, the testimony elicited did not substantially advance the prosecution's case-in-chief, but rather was limited to impeaching the alibi witness' credibility, even if the information adduced may have collaterally aided the prosecution's case. *See Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 259, 619 P.2d 1032, 1036 (1980) (impeachment is attack upon credibility of the witness, but impeachment is not a process whereby substantive evidence is adduced); *People v. O'Dell,* 84 Ill. App. 3d 359, 405 N.E.2d 809 (1980) (as a general rule, it is proper on cross-examination of defense witness to question all matters that explain, qualify, discredit or destroy his direct testimony, although they may incidentally constitute new matter which aids cross-examination case). The defense could have requested a limiting jury instruction, at the time the evidence was admitted, that the alibi witness' statements in question should be considered only insofar as they reflected on the witness' credibility, and should not be considered as evidence that the defendant actually committed the offenses of which he was accused. The defense, however, did not request such an instruction.

The second issue raised by the appellate defender's brief is whether the photo identification procedure employed by the police was unnecessarily suggestive. The specific allegation proffered is that the background of the defendant's photo differed from that of the others. The background in the defendant's photo was a wire-mesh fence, whereas four of the other photos were mug-shots and one had an indeterminate background. The defendant contends not only that the background in his photo caused him to stand out in the photo spread, but also that the presence of mesh fence made it appear as if the defendant were in jail.

 When the admissibility of an out-of-court identification is challenged, the lower court "must determine whether the identification procedure was unnecessarily suggestive . . . and, if so, whether that suggestiveness rendered the identification unreliable." *State v. Humphrey,* 129 N.H. 654, 656, 531 A.2d 329, 331 (1987). We begin our analysis by noting that physical differences in photographs, such as disparate backgrounds, do not in and of themselves render a photographic spread unnecessarily suggestive. *See Humphrey, supra* at 656, 531 A.2d at 331; *United States v. Robertson,* 606 F.2d 853, 857 (9th Cir. 1979) ("Mere variations in appearance among persons or photographs presented to a witness do not automatically invalidate a pretrial identification . . . . Before a conviction can be reversed on such grounds, the . . . procedure must have been 'so impermissibly suggestive as to give rise to a very substantial like-

lihood of irreparable misidentification.'" (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968))); *Clark v. State*, 292 Ark. 69, 727 S.W.2d 853 (1987) (fact that defendant was pictured in front of a blue background and two other individuals were placed in front of brown background was of no consequence). Instead, the determining factor is whether the police have implicitly conveyed their opinion of the criminal's identity to the witness by means of the photographic display.

■■ If anything, the photographic display in question was highly unsuggestive as to the defendant's photograph. "The burden to prove unnecessary suggestiveness is on the defendant." *Humphrey supra*. We are not persuaded by the defendant's contention that the wire-mesh fence behind him suggested he was or had been in jail. The grillwork in the photo does not resemble the bars of a jail cell. In addition, the defendant was standing in front of, rather than behind, the fencing. These circumstances negate any possible prejudicial inference that the defendant was presently incarcerated, or had been in the recent past. Consequently, we hold that the trial court did not abuse its discretion in denying the defendant's motion to suppress the out-of-court identification as being unnecessarily suggestive.

The arguments of the defendant in his *pro se* brief begin by overlapping, to a certain extent, the arguments of the appellate defender regarding the issue of the admissibility of the out-of-court photographic identification. The defendant asserts that the trial court did not consider seriously enough the allegation that the out-of-court identification was unnecessarily suggestive, as evidenced by its quick decision and its reference to the fact that the attack occurred in broad daylight. Our review of the transcript reveals that the trial court did not express any doubt on the suggestiveness of the display. A quick decision does not mean an erroneous decision.

■ The defendant's *pro se* brief also asserts that the trial court erred in allowing the prosecution to recall a witness to make an identification of the defendant. The witness was recalled after she had left the witness stand, but prior to the calling of the next witness. The witness was recalled because the prosecutor had just become aware of her ability to identify the defendant. Superior Court Rule 69 provides: "After a witness has been dismissed from the stand, he cannot be recalled without the permission of the Court." Our case law supports the discretion of the trial court in this matter. *State v. Merski*, 123 N.H. 564, 569, 465 A.2d 491, 494

(1983). Additionally, defense counsel had ample opportunity to cross-examine the witness. Thus, we find no abuse of the trial court's discretion.

The remaining issues raised by the defendant were not raised below and therefore will not be considered here. *State v. Lillios*, 128 N.H. 722, 723, 515 A.2d 1198, 1198 (1986); *State v. Laliberte*, 124 N.H. 621, 474 A.2d 1025 (1984).

*Affirmed.*

All concurred.