Hillsborough-northern judicial district
No. 2008-365

THE STATE OF NEW HAMPSHIRE

v.

ANTOINE BELL-ROGERS

Argued: May 5, 2009
Opinion Issued: August 4, 2009

*Kelly A. Ayotte*, attorney general (*N. William Delker*, senior assistant attorney general, on the brief and orally), for the State.

*Getman, Stacey, Schulthess & Steere, PA*, of Bedford (*Andrew R. Schulman* and *Elizabeth Hurley* on the brief, and *Mr. Schulman* orally), for the defendant.

BRODERICK, C.J. The defendant, Antoine Bell-Rogers, was convicted by a jury of armed robbery. *See* RSA 636:1 (2007). He appeals an order of the Superior Court (*McGuire*, J.) denying his motion to suppress in-court and out-of-court identifications of him based upon a photo array identification procedure that he claims was unreliable and unnecessarily suggestive. We affirm.

The following facts are not in dispute or are supported by the record. On October 10, 2006, two armed men entered El Mexicano restaurant in Manchester. The first man, carrying a handgun, went into the kitchen where restaurant owner José Rodriguez and his wife, Patricia Deleon, were preparing food. The second man, carrying a knife, went to the pool table area. The man in the kitchen fired a shot at the floor, in between Rodriguez's feet, and demanded that Rodriguez hand over the jewelry he was wearing. Deleon, who was chopping vegetables about ten feet from Rodriguez, told her husband to give the robber everything. Rodriguez gave him his watch and necklace, but the man fired a second shot into the air, and demanded the bracelet Rodriguez was wearing. Rodriguez told him he could not remove it and lowered his head, believing that the robber was going to shoot him. When he raised his head, the two men were leaving.

Shortly after the robbers fled, Manchester police arrived at the scene and interviewed Rodriguez, Deleon and two other witnesses. Rodriguez described the gunman as a black male in his early twenties, about five feet six inches tall, 170 pounds, with a thin beard and wearing a red bandana, a white sweater, black jeans and black sneakers. Deleon described the gunman as a black male in his early to mid twenties, about five feet eight inches tall, 160 pounds and wearing a white sweatshirt with a hood, black pants and a red bandana. Each of the witnesses has limited English proficiency and speaks Spanish as his or her native language.

Five days later, Detective John Patti compiled two photo arrays of eight photos each with assistance from a computer program. Patti testified that the computer program synthesizes age, height, weight, race and gender information about the suspect and then retrieves images of all photos from police files that match the information. From the computer results, Patti selected photos matching the descriptions given to police by the witnesses. He was careful not to include any photo of a person wearing the same clothing as the robbers were described as having worn. Patti placed the defendant's photo in the first array, on the top of two rows of four, third from the left. The defendant was the only person in either array who wore

a white tank top-style shirt, colloquially known as a "wife beater." The arrays included other photos of people wearing white shirts, and one person pictured in the first array wore a black tank top.

On the same day, Patti and Officer Timothy Feliciano, a native Spanish-speaker, presented the photo arrays first to Rodriguez and then to Deleon at La Taverna, another Manchester restaurant they own. The officers ensured that Deleon and Rodriguez were at opposite ends of the restaurant so that they could not see or hear one another when receiving instructions or viewing the photo arrays. When conducting a photo array identification, Manchester police use a form called "Photo Line-Up Witness Instructions," which instructs witnesses in English as to how the photo array identification is conducted. Feliciano read the instructions aloud to Rodriguez, translating them into Spanish sentence by sentence. The instructions provide, in relevant part: "This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. . . . You do not have to identify anyone. . . . You must make up your own mind and not be influenced by other witnesses, if any." Rodriguez acknowledged that he understood the instructions.

The first photo array, containing the defendant's photo, was placed on a well-lit pool table in front of Rodriguez. Initially, he was not able to make any identification. He was then shown the second photo array, which did not contain a photo of the defendant. He again made no identification. When, at his request, Rodriguez was shown the first photo array a second time, however, he identified the defendant as the man who robbed him at gunpoint. Rodriguez then wrote out a statement in Spanish at the bottom of the police form. Rodriguez left the pool table area, Deleon was called over and Feliciano went through the instructions with her, following the same procedure. She identified the defendant as the one who "looked most familiar" because of his skin color, mustache and beard. At trial, Rodriguez testified that he had stood face-to-face with the robber, and that the robber's features were "recorded in [his] mind." When asked at trial about his initial failure to identify the defendant from the photo array, he testified that "[i]n the picture I saw somebody who looked very much like him, but I didn't want to identify him."

Prior to trial, the defendant moved to suppress the in-court and out-of-court identifications made by Rodriguez and Deleon, arguing that the photo array was unreliable and unnecessarily suggestive. The sole basis advanced by the defendant for this argument was that he was the only person wearing a "wife beater" in the photos. Following a hearing, the trial court denied his motion, reasoning:

> [T]he fact that the defendant is the only one wearing a white tank
> top is an insignificant variation between the photographs. All of

> the witnesses to the robbery told the police that the gunman was wearing a sweater or sweatshirt, and therefore, even if the defendant was the only one in the array wearing a white tank top, that fact in no way connects the defendant to the crime. Nor does the Court believe that the defendant's "wife beater" stands out in the array any more than does the soccer jersey in the first photograph or the camouflage shirt in the sixth photograph.

(Citations omitted.) The defendant was subsequently convicted by a jury of armed robbery. Based upon a pre-trial stipulation, the trial court also found him guilty of being a felon in possession of a deadly weapon. *See* RSA 159:3 (2002). On appeal, the defendant argues that the in-court and out-of-court identifications violated his rights under Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution. Specifically, he argues that the witnesses' identification testimony resulted from an unnecessarily suggestive and unreliable identification procedure and that the resulting in-court and out-of-court identifications must therefore be suppressed.

We first address the defendant's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983). "To determine whether the out-of-court identification procedure was unnecessarily suggestive we ask whether the police have implicitly conveyed their opinion of the criminal's identity to the witness by means of the photographic display." *State v. Rezk*, 135 N.H. 599, 601 (1992) (quotation omitted). The defendant carries the burden of proving that the out-of-court procedure was unnecessarily suggestive. *Id*. "[P]hysical differences in photographs . . . do not in and of themselves render a photographic spread unnecessarily suggestive." *State v. Duff*, 129 N.H. 731, 735 (1987). We will not overturn the trial court's finding on a motion to suppress unless it is contrary to the weight of the evidence. *Rezk*, 135 N.H. at 601.

The defendant first argues that the photo array was unnecessarily suggestive because he was the only person wearing a white tank top shirt known as a "wife beater." He contends that this type of shirt is "a symbol of violence and criminality." Even if we were to assume that the defendant's shirt in fact carries such symbolism, his argument still fails under the facts of this case.

The defendant has not shown anything in the record indicating that either Rodriguez or Deleon noticed the defendant's shirt in the photo or that their identification of him was influenced or affected by clothing in any way. Indeed, their trial testimony and written statements reflect that they focused upon his facial features, and Deleon's written statement specifically

noted that the defendant's photo looked familiar "for his color, beard and mustache." The witnesses told police that the robber was wearing a sweater or sweatshirt; thus, the defendant's clothing in the photo array does not connect him to the crime. The defendant has therefore failed to carry his burden of showing that the police implicitly conveyed their opinion of the criminal's identity to the witnesses by means of the photographic display.

██ Further, the defendant's contention that "no other individual in the array wore similar clothing" is inaccurate. The record clearly supports the trial court's finding that another person pictured in the same array wore a tank top, only in black instead of white, and that two other individuals pictured wore white shirts. In any event, "physical differences in photographs . . . do not in and of themselves render a photographic spread unnecessarily suggestive." *Duff*, 129 N.H. at 735.

Next, the defendant argues that the photo array was unnecessarily suggestive because the defendant's photo was "featured prominently, in the top middle of the array." The State contends that this argument has not been preserved for our review. We agree. He did not present this argument in his motion to suppress or at the hearing on the motion in the trial court. Because the trial court had no opportunity to consider this argument, it is not properly before us. *See State v. Blackmer*, 149 N.H. 47, 48 (2003) ("[W]e will not review any issue that the defendant did not raise before the trial court.").

Finally, the defendant argues that the identification procedures used by police when presenting the array to the witnesses were unnecessarily suggestive. He suggests that "[t]he police were careless in the selection of the photographs," that they "had no safeguards in place to ensure the accuracy of an identification made by a non-English speaker," that the process should have been recorded at the police station, and that Deleon and Rodriguez might have communicated with each other during the identification process. The State contends that this argument has not been preserved for our review. We again conclude that this argument is not properly before us and therefore decline to address it for the same reasons as stated above.

The defendant has failed to carry his burden of proving that the photo array identification procedure was unnecessarily suggestive or unreliable. Accordingly, neither the out-of-court identifications nor the in-court identification testimony need be suppressed.

██ The Federal Constitution offers the defendant no greater protection than the State Constitution with regard to his claims of error. Whether he raises a due process claim under the Fourteenth Amendment to the United States Constitution or under Part I, Article 15 of the New Hampshire

Constitution, he carries the burden of proving that the out-of-court procedure was unnecessarily suggestive. *Rezk*, 135 N.H. at 601. Accordingly, we reach the same result under the Federal Constitution.

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.