Submitted on record and briefs January 22, affirmed September 1, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# CARROL WAYNE COFFMAN,
*Appellant.*

## (No. 20-949, CA A22221)

650 P2d 144

Gary D. Babcock, Public Defender, and Ernest E. Estes, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Richard David Wasserman, Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Richardson and Warden, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction for escape in the second degree. ORS 162.155. He contends that he was denied the right to a speedy trial under the Interstate Agreement on Detainers, ORS 135.775, the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Oregon Constitution.

On April 12, 1978, defendant escaped from the Tillamook County prison camp where he was serving a sentence for robbery in the second degree. On April 19, defendant was indicted for escape in the second degree in Marion County,[1] and an arrest warrant was issued. Sometime before April 26, defendant was arrested in California and incarcerated in the Mendocino County jail. The record does not show whether defendant was charged with a crime in California or how long he spent in the county jail. On April 26, 1978, the assistant records officer of the Oregon State Penitentiary (OSP) sent a copy of the warrant for defendant's arrest on the escape charge to the Mendocino County sheriff's office with instructions to "file this as our detainer and notify us when subject will be available for pickup." The record is again silent on what proceedings there may have been in California against defendant after this correspondence, but he was transferred to the San Quentin State Prison in California to commence serving a five year term of imprisonment. On August 10, 1978, the assistant records officer of OSP sent a letter, together with copies of orders committing defendant to OSP, to San Quentin prison officials with instructions to "file these as our detainer and notify us prior to his discharge or parole."

One year later, on August 12, 1979, defendant signed documents requesting disposition of outstanding charges against him in Salem, pursuant to the Interstate Agreement on Detainers. ORS 135.775. California prison officials did not send the documents to the prosecuting officer in Oregon. On January 13, 1981, 17 months after they were signed, the documents were received at OSP.

---

[1] The Marion County indictment, charging defendant with escape from a correctional facility, ORS 162.155(1)(c), was based on the theory that, while confined in the prison camp, defendant was constructively confined in the Oregon State Penitentiary in Marion County.

Defendant was returned to OSP on March 7, 1981, and a new indictment, charging defendant with escape in the second degree, was returned on May 19, 1981, in Tillamook County.[2] On June 1, defendant moved to dismiss the charge on the ground of lack of speedy trial. After a hearing on August 17, the motion was denied, and on August 20, 1981, defendant was found guilty of escape in the second degree after trial to the court on stipulated facts. He was sentenced to a term of imprisonment of one year to be served concurrently with the sentence he was serving.

Defendant first contends that his right to a speedy resolution of the escape charge under the Interstate Agreement on Detainers was violated. The pertinent language of ORS 135.775 is found in Article III, which provides:

> "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *." (Emphasis added.)

We have held that a detainer on outstanding charges must be lodged at the institution where the defendant is being held in order to trigger the protections of the agreement on detainers. *State v. Hibdon,* 36 Or App 97, 102, 583 P2d 579 (1978); *State v. Puckett,* 22 Or App 154, 157, 538 P2d 74 (1975).

In his memorandum filed August 5, 1981, and relied on at the August 17 hearing on the motion to dismiss, defendant conceded:

> "* * * The only Oregon detainer which was on file at San Quentin State Prison, involved the unfinished

---

[2] Under our holding in *State v. Dillenburg,* 49 Or App 911, 621 P2d 1193 (1980), the Marion County indictment was subject to challenge for improper venue.

sentence at Oregon State Penitentiary. Technically, that detainer did not involve an untried indictment, information, or complaint. Thus, the detainer necessary to trigger the interstate compact was never filed."

On appeal, defendant contends that the two "detainers" that were filed at the request of the OSP records officer should be considered by this court as triggering the provisions of the agreement. However, the papers that the OSP records officer sent to the Mendocino County sheriff were not effective as a detainer, because there is nothing in the record that defendant had "entered upon a term of imprisonment" in the Mendocino County jail; those sent to San Quentin did not operate as a detainer, because they were not based on an untried indictment, information or complaint. ORS 135.775, Article III. Moreover, as contemplated by the agreement, the appropriate officer to lodge a detainer against a prisoner is a *prosecutor* or *law enforcement officer. See United States v. Mauro,* 436 US 340, 358, 98 S Ct 1834, 56 L Ed 2d 329 (1978). Because no detainer against defendant was ever filed, the interstate agreement did not become operative, and the state was not bound by its provisions. We acknowledge that being able to cause prisoners to be held without filing detainers may allow prosecuting officials to frustrate the purposes[3] of the agreement by waiting until a prisoner is about to be released from the other state's custody before filing a detainer.[4] A prisoner's only remedy in such a situation is to move for

---

[3] The purpose of the agreement on detainers is set out in ORS 135.775, Article I:

"The party states find that charges outstanding against a prisoner, detainers based or untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

[4] *See* Note, *Convicts - The Right to a Speedy Trial and the New Detainer Statutes,* 18 Rutgers L Rev, 828, 859 (1964); *see also* U S Dep't of Justice, The Law of Detainers, p 10 (1973).

dismissal of the charges on constitutional grounds for lack of speedy trial.

■      Defendant here claims that his constitutional right to a speedy trial was violated. The Supreme Court in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), set out the four factors to be considered in assessing an alleged constitutional violation of a defendant's right to speedy trial: the length of the delay, the reason for the delay, defendant's assertion of his right and prejudice to the defendant. We apply the same factors in determining defendant's right to a speedy trial under Oregon's Constitution. *State v. Ivory,* 278 Or 499, 504, 564 P2d 1039 (1979).

■ ■      In the present case, the state concedes that the length of delay, approximately three and one-half years, is sufficient to trigger an analysis of the other three factors. It is also conceded by the state that defendant's request for disposition of outstanding charges on August 12, 1979, was a timely assertion of his right. The reason for the delay must be charged partially to defendant for fleeing to California. *See State v. Miebach,* 52 Or App 709, 718, 629 P2d 1312, *rev den* 291 Or 771 (1981). The remaining delay of approximately three years is chargeable to the state for lack of due diligence in bringing defendant to trial. The prosecution is not relieved of a duty to provide defendant with a speedy trial just because defendant is in custody elsewhere. *United States v. Mauro, supra,* 436 US at 358. The August 10, 1978, letter from OSP to San Quentin is evidence that the state knew where defendant was incarcerated. Defendant was not returned for trial in Oregon on the escape charge until March, 1981. Where due diligence could have eliminated the delay, it must be charged to the state.

■ ■      The last factor to be considered is whether there is a reasonable possibility that defendant was prejudiced by the delay. *State v. Ivory, supra,* 278 Or at 507. At the hearing on the motion to dismiss, defendant conceded that he had suffered no particular prejudice to his defense from the delay. Instead, defendant urged the trial court to find prejudice in the fact that the failure of the state to lodge a detainer against him foreclosed him from obtaining the

protection of the Interstate Agreement on Detainers.[5] His argument presupposes that he has a right to have a detainer filed or, to put it another way, that the state, because it had an untried indictment pending against him, was required to file a detainer. Neither the constitution nor the interstate agreement contains such a requirement. We will not create one in order to find a possibility of prejudice to defendant.

Affirmed.

---

[5] Defendant also contends that the delay affected his parole possibilities and impaired his rehabilitation. This contention is raised for the first time on appeal, and we will not consider it. *State v. Green,* 49 Or App 949, 621 P2d 67 (1980).