Hillsborough
No. 89-403

# Edward D. Humphrey, Sr.

v.

# Michael Cunningham, Warden
# The New Hampshire State Prison

December 28, 1990

728

*Murphy, McLaughlin & Hemeon*, of Laconia (*James M. Carroll* on the brief and orally), for the petitioner.

*John P. Arnold*, attorney general (*Jeffrey W. Spencer*, attorney, on the brief, and *Monica Ciolfi*, assistant attorney general, orally), for the respondent.

BATCHELDER, J. The petitioner, Edward D. Humphrey, Sr., was convicted of armed robbery and sentenced to seven and one-half to fifteen years in the State Prison. His conviction was affirmed on appeal. *State v. Humphrey*, 129 N.H. 654, 531 A.2d 329 (1987). He subsequently filed a petition for writ of habeas corpus, claiming that he was denied his right to the effective assistance of counsel by his counsel's failure to file a motion to dismiss for lack of speedy trial based upon an approximately sixteen-month delay between the date of his indictment for armed robbery and the date he received notice of the indictment. The petitioner maintained that this delay caused him actual prejudice, because it resulted in the loss of two alibi witnesses and a photographic array, as well as the dimming of all witnesses' memories. The Superior Court (*Pappagianis*, J.) dismissed

his petition after a hearing held on March 31, 1989. It ruled that the petitioner did not suffer any prejudice, because a motion to dismiss on speedy trial grounds would have been unsuccessful and, therefore, there was no need to determine whether the petitioner's counsel was reasonably competent. On appeal, the petitioner argues that the court erred in ruling that he did not demonstrate actual prejudice as part of his ineffective assistance of counsel claim. He also asserts that the court erred in failing to rule that the approximately sixteen-month delay amounted to presumptive prejudice, thereby requiring an analysis as to whether his counsel was reasonably competent. We affirm.

The following facts are relevant to our determination of the issues presented by the petitioner. On November 1, 1983, the petitioner escaped from the State Prison, where he was serving an earlier sentence for an armed robbery committed in Nashua. He spent the night of November 1st and early morning of November 2nd in Natick, Massachusetts, with a woman named Lisa Quieros. At 8:30 a.m. on the morning of November 2nd, a Natick police officer on foot patrol recognized either the petitioner, who was with Quieros at the time, or the car the petitioner was driving, a Plymouth Barracuda that had been stolen in Nashua, and attempted to stop him. The petitioner, however, completely eluded the officer. That evening at approximately 7:30 p.m., an unmasked man carrying a sawed-off shotgun robbed Bergeron's Arco Station in Nashua. A more complete statement of facts regarding the robbery is found in *State v. Humphrey*, 129 N.H. 654, 531 A.2d 329.

At 10:21 p.m., the petitioner registered at a Holiday Inn in Providence, Rhode Island. He checked out the next day, November 3, 1983, at 4:37 p.m., and was arrested later that day for the armed robbery of a Providence liquor store. The "Barracuda," which was involved in the Nashua robbery, was found in a parking lot near the Providence liquor store with a sawed-off shotgun inside it. The petitioner pled guilty to the Providence robbery on April 10, 1984, after having been indicted for the second Nashua robbery on January 3, 1984. He testified during the hearing held on his petition for writ of habeas corpus that he was first notified of the Nashua robbery charge in April or May of 1985, when an exemplified capias was sent by the New Hampshire authorities to the Rhode Island authorities. The capias was issued on April 30, 1985, and an interstate detainer was filed on July 8, 1985.

At his trial for the second Nashua robbery, held on February 19 and 20, 1986, the petitioner attempted to show that he was not in Nashua at 7:30 p.m. on November 2, 1983, the time of the robbery. Jeff Oehley, a friend of the petitioner, testified that he saw him in Massachusetts one evening in November of 1983, and that the petitioner left before 9:00 p.m. for Rhode Island. The petitioner's sister, Beth Crawford, testified that the petitioner visited her at her home in Massachusetts sometime in late October or early November, after dinnertime. She stated that he stayed forty-five minutes to one hour and then told her he was going to Rhode Island. Neither Oehley nor Crawford could remember the date they had seen the petitioner. The petitioner unsuccessfully tried to locate Quieros and a bartender with whom he claims he was drinking and playing pool on the night of November 2, 1983. According to the petitioner's trial counsel, who testified at the March 31, 1989 hearing, Quieros's testimony might have been prejudicial to the petitioner's defense, in that she could have testified that there was a sawed-off shotgun in the "Barracuda" that the Natick police officer saw the petitioner driving on the morning of November 2, 1983, thus providing a link between the petitioner and the Nashua robbery.

The State, on the other hand, presented evidence that two eyewitnesses to the second Nashua robbery, Richard Bergeron and his co-worker, Gary Bathalon, had identified the petitioner as the robber from two photographic arrays. The first array of six photographs contained an older photograph of the petitioner taken when he had longer hair and a mustache. Bergeron and Bathalon separately chose the petitioner's photograph and said that they were seventy percent certain that he was the robber. Two days later, they were shown a second array of five photographs, including a photograph taken of the petitioner after he was arrested for the Providence robbery, in which he had shorter hair and no mustache. They again selected the petitioner's photograph, this time stating that they were one hundred percent certain that he was the robber. The police did not preserve the first photographic array. During trial, the petitioner made an oral motion to dismiss the case for failure to preserve the first array, which he argued constituted potentially exculpatory evidence. The trial court denied the petitioner's motion, and the petitioner appealed its decision. We did not address this issue because it was not briefed by the petitioner. *See Stewart v. Cunningham, Warden*, 131 N.H. 68, 71, 550 A.2d 96, 98 (1988).

■■ Before we analyze the petitioner's arguments, there are two preliminary procedural issues raised by the State which should be addressed. Although the State did not raise this issue in its brief, it asserted at oral argument that the petitioner's ineffective assistance of counsel claim should be denied, because it could have been raised as part of the petitioner's direct appeal of his armed robbery conviction. A petitioner, however, may collaterally attack a proceeding by filing a petition for writ of habeas corpus after the time for a direct appeal has expired, if he can establish a harmful constitutional error. *Bussiere v. Cunningham, Warden*, 132 N.H. 747, 750, 571 A.2d 908, 910 (1990). We therefore reject the State's argument that the petitioner's ineffective assistance of counsel claim should be summarily denied.

Second, the State contends that the alleged prejudice to the petitioner caused by the loss of the first photographic array should not be considered in evaluating the petitioner's argument that his trial counsel's failure to file a motion to dismiss on speedy trial grounds deprived him of his right to the effective assistance of counsel. It argues that this issue may not be raised in the present appeal, because the petitioner presented the issue of the loss of the photographic array in the notice of appeal filed during his direct appeal. In support of its position, the State cites *Grote v. Powell, Commissioner*, 132 N.H. 96, 562 A.2d 152 (1989). The issue previously appealed by the petitioner, as stated in the notice of appeal, was "[w]hether the Court erred by denying the oral motion to dismiss for failure to preserve potentially exculpatory evidence [i.e., the first photographic array]." The petitioner, however, waived this issue by not briefing it. *See Stewart v. Cunningham, Warden*, 131 N.H. at 71, 550 A.2d at 98.

In *Grote v. Powell, Commissioner supra*, we stated that we would not consider an issue raised "under the guise of an ineffective assistance of counsel claim" that we had previously considered as part of a petitioner's original appeal. *Id.* at 100–01, 562 A.2d at 154–55. The petitioner in *Grote*, after appealing the trial court's decision to admit certain evidence at trial, subsequently filed a petition for writ of habeas corpus in which he argued that the admission of this evidence contributed to his trial counsel's ineffective assistance. *Id.* at 100, 562 A.2d at 154. *Grote* is distinguishable from the present case in that, during the direct appeal of his armed robbery conviction, we never addressed the issue of prejudice to Humphrey caused by the loss of the photographic array. This issue was not, therefore, fully

litigated on appeal. Moreover, the issue of prejudice due to the loss of the photographic array, which the petitioner waived during his direct appeal, is not the precise issue raised by the petitioner in the context of his ineffective assistance of counsel claim; namely, whether a motion to dismiss on speedy trial grounds would have been successful. Rather, it is an issue which arises simply because one of the factors in the speedy trial analysis happens to be the prejudice to the defendant caused by the pretrial delay. *See State v. Tucker*, 132 N.H. 31, 32, 561 A.2d 1075, 1077 (1989).

Thus, the petitioner, by arguing that he was denied his right to a speedy trial in part because the loss of the photographic array prejudiced his defense, does not appear to be circumventing the appellate process. Because the issue of prejudice due to the loss of the photographic array was not fully litigated on appeal, and because we find that there has been no procedural abuse by the petitioner, we shall consider this issue as part of the petitioner's ineffective assistance of counsel claim. *See* IV STANDARDS FOR CRIMINAL JUSTICE, Standard 22-6.1(b) (Supp. 1986) (stating that "[u]nless barred because of abuse of process, claims advanced in postconviction applications should be decided on their merits, even though they might have been, but were not, fully and finally litigated in the proceedings leading to judgments of conviction").

We now turn to the petitioner's first argument on appeal. The petitioner asserts that the trial court erred in ruling that he failed to demonstrate actual prejudice in his ineffective assistance of counsel claim. The standard for attorney performance, whether the ineffective assistance of counsel claim is raised under the State or the Federal Constitution, is that of "reasonably effective assistance." *State v. Fennell*, 133 N.H. 402, 405, 578 A.2d 329, 331 (1990). A defendant must show two things to prevail on an ineffective assistance of counsel claim. *Id.* at 405, 578 A.2d at 331. He must show that counsel's performance was deficient and, in addition, he must prove that counsel's conduct actually prejudiced him, so that there is a reasonable probability that the result of the proceeding would have been different had counsel been competent. *Id.* at 405, 578 A.2d at 331. The key to an ineffective assistance of counsel claim is a showing of actual prejudice. *See id.* at 406–07, 578 A.2d at 332. In order to demonstrate actual prejudice in the present case, the petitioner must show that a motion to dismiss for lack of speedy trial would properly have been granted. *See id.* at 409, 578 A.2d at 333 (holding that because a motion to dismiss one of the indictments charging the de-

fendant with aggravated felonious sexual assault would properly have been granted, the defendant was prejudiced by counsel's failure to bring such a motion); *cf. State v. Faragi*, 127 N.H. 1, 7, 498 A.2d 723, 728 (1985) (deciding that because a motion to suppress would not have been successful, there was no prejudice to the petitioner and therefore no ineffective assistance of counsel).

■■ To determine whether a motion to dismiss for lack of speedy trial would have been successful had it been filed by the petitioner's trial counsel, we analyze the petitioner's speedy trial claim by applying the four-factor balancing test enunciated in *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972). *State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988). These factors are: (1) the length of the pretrial delay; (2) the reason(s) for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *State v. Tucker*, 132 N.H. at 32, 561 A.2d at 1077. No inquiry as to the remaining three *Barker* factors is required, however, unless the length of the delay is presumptively prejudicial. *State v. Monahan*, 125 N.H. 17, 22, 480 A.2d 863, 866 (1984).

■ The period of delay considered for purposes of analyzing a defendant's speedy trial claim begins to run when he is arrested or charged, whichever comes first. *See State v. Quinlan*, 122 N.H. 51, 53, 440 A.2d 13, 14 (1982). In his brief, and at oral argument, the petitioner conceded that because he was not "available" to the State until the disposition of the Rhode Island charge, his right to a speedy trial attached on April 10, 1984, the date he pled guilty to the Rhode Island armed robbery. *See* RSA 606-A:1, art. V(a) and (d) (providing that a State in which an accused is incarcerated on charges pending in that State shall be entitled to temporary custody of the accused for purposes of prosecuting these charges, when custody of the accused has been requested by another State in which charges are pending against him). The delay in question therefore occurred from April 10, 1984, until April 30, 1985, when the exemplified capias was issued notifying the defendant of the Nashua armed robbery charge, a period of approximately twelve months rather than sixteen months as the defendant originally claimed in his petition.

■■ Because this delay is assumed to be "presumptively prejudicial," we shall assess its reasonableness by considering the other *Barker* factors. *See Colbath*, 130 N.H. at 319, 540 A.2d at 1213 (according to a policy followed by the superior court, in a felony case

a pretrial delay of nine months or more is considered presumptively prejudicial). The reason for the delay, the second *Barker* factor, is the State's failure to make a diligent, good faith effort to bring the petitioner to trial. The State has a constitutional duty to make such an effort to bring a defendant to trial, *State v. Hastings*, 120 N.H. 454, 455, 417 A.2d 7, 8 (1980), which is "'not excused merely because the prisoner is incarcerated in another jurisdiction.'" *Strickler v. State*, 55 Md. App. 688, 694, 466 A.2d 51, 54 (1978), *cert. denied*, 299 Md. 137, 472 A.2d 999 (1984) (quoting *State v. Hicks*, 285 Md. 310, 320, 403 A.2d 356, 361 (1983)); *see also State v. Coffman*, 650 P.2d 144, 147 (Or. 1982). In the present case, the delay is chargeable to the State, because the State knew that the petitioner was incarcerated in Rhode Island during this twelve-month period, yet it did not file an interstate detainer under RSA 606-A:1 until after a year had passed. *See Coffman*, 650 P.2d at 147; *see also State v. Monahan*, 125 N.H. at 22–23, 480 A.2d at 866 (stating that because the record is "barren of any facts which would support a diligent, good-faith effort by the State to bring the defendant to trial," the delay is attributable to the State).

At this point, a review of the *Barker v. Wingo* language discussing the reason for the delay as a factor is instructive:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. *A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily* but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

(Emphasis added.) *Barker v. Wingo*, 407 U.S. at 531. The record in this case indicates that the petitioner was not brought to trial earlier, because the State did not want to become "involved in shuffling the [petitioner] back and forth between states." Since this delay resulted in, at best, a delay of three months beyond the nine-month period recommended by superior court policy, *see Appendix*, SUPER. CT. RS., at 73, it can hardly be considered a deliberate attempt by the State to delay the petitioner's trial in order to hamper his defense.

Hence, the delay in the present case, although precipitated by the State, should not be weighted heavily against it.

 Substantial emphasis is placed on the last two factors of the *Barker* test: the defendant's assertion of his right to a speedy trial and the prejudice to the defendant caused by the delay. *Colbath*, 130 N.H. at 319, 540 A.2d at 1213–14. The petitioner's failure to assert his right to a speedy trial prior to his receipt of the exemplified capias cannot be held against him, because he did not know that he had been indicted for the Nashua armed robbery. *See Taylor v. State*, 429 So. 2d 1172, 1175 (Ala. Crim. App.), *cert. denied*, 464 U.S. 950 (1983) (stating that "[a]n accused cannot assert his right to a speedy trial where he has no knowledge of the indictment"). With regard to the fourth factor, the petitioner contends that the delay resulted in his inability to locate two alibi witnesses, Quieros and the unknown bartender; the dimming of the other witnesses' memories; and the loss of the first photographic array. The record is devoid, however, of any showing that the prejudice alleged by the petitioner occurred as a result of the delay or that the sought-after testimony would have established the petitioner's claimed alibi. As the State points out, Quieros's testimony might have been highly prejudicial to the petitioner's defense, because she could have linked him with the Nashua armed robbery by testifying about the sawed-off shotgun found in the stolen "Barracuda" that was involved in the robbery. Although the twelve-month delay may have caused Crawford's and Oehley's memories to dim, we have held that dimming of memories alone is insufficient to constitute prejudice for purposes of a speedy trial claim. *See State v. Little*, 121 N.H. 765, 773, 435 A.2d 517, 522 (1981).

Additionally, it is not clear how the loss of the photographic array prejudiced the petitioner's defense. The petitioner argues that, due to the loss of the first photographic array, he was unable to confront Bergeron and Bathalon, the two eyewitnesses to the second Nashua armed robbery, as to "their less than positive identification of the Petitioner." Their less than one hundred percent certainty is explained, however, by the fact that the petitioner's appearance had changed since the date the photograph contained in the first array was taken. They subsequently identified the petitioner as the robber with one hundred percent certainty when shown the second photographic array containing a more recent photograph of the petitioner, taken after he was arrested for the Providence robbery.

 We conclude that although the State was responsible for a twelve-month delay of the petitioner's trial, the petitioner was not

denied his constitutional right to a speedy trial, because he suffered little or no prejudice as a result of the delay. *See United States v. Graham*, 538 F.2d 261, 264–66 (9th Cir.), *cert. denied*, 429 U.S. 925 (1976) (defendant's sixth amendment right to a speedy trial was not violated where the length of the delay was only 12 to 12½ months, the government's conduct which caused the delay was negligent rather than deliberate, and the defendant asserted his right to a speedy trial, but did not suffer any serious prejudice as a result of the delay); *State v. Curtis*, 787 P.2d 306, 316 (Mont. 1990) (defendant's sixth amendment right to a speedy trial was not violated when her trial was delayed 291 days due to the State's negligence, but her claim that the delay prejudiced her defense was speculative); *cf. People v. Belcher*, 542 N.E.2d 419, 423 (Ill. App. Ct. 1989) (stating that if the other three *Barker* factors weigh heavily in the defendant's favor, then no showing of prejudice is necessary for the court to find a violation of his right to a speedy trial). Accordingly, because a motion to dismiss for lack of speedy trial in all probability would have been unsuccessful, we uphold the trial court's ruling that the petitioner failed to demonstrate actual prejudice as part of his ineffective assistance of counsel claim.

 The petitioner's second argument is that the length of the delay amounted to presumptive prejudice, which required the trial court to determine whether his counsel's performance fell below the standard of reasonably effective assistance. In making this argument, the petitioner confuses the analysis of speedy trial claims with the analysis used for ineffective assistance of counsel claims. The length of the delay may be presumptively prejudicial for purposes of speedy trial analysis, in a felony case, if it is nine months or more, *see State v. Colbath*, 130 N.H. at 319, 540 A.2d at 1213, thereby warranting consideration of the remaining three *Barker* factors. But in the context of an ineffective assistance of counsel claim, prejudice is presumed only "where circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all," *Grote v. Powell, Commissioner*, 132 N.H. at 101, 562 A.2d at 155 (quoting *Avery v. Cunningham, Warden*, 131 N.H. 138, 147, 551 A.2d 952, 957–58 (1988), itself quoting *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984)), for example, when counsel has an actual conflict of interest. *State v. Fennell*, 133 N.H. at 406, 578 A.2d at 331. Otherwise, the petitioner must demonstrate actual prejudice in order to establish that there was ineffective assistance of counsel. *See Grote*, 132 N.H. at 102, 562 A.2d at

738

155. We therefore hold that the trial court was not required to determine whether the petitioner's counsel's performance fell below the standard of "reasonably effective assistance," because the length of the delay did not constitute presumptive prejudice in the context of the petitioner's ineffective assistance of counsel claim and, in addition, because the petitioner failed to demonstrate actual prejudice.

*Affirmed.*

HORTON, J., did not sit; the others concurred.