Turgeon v. Cunningham               CV-93-101-B    05/05/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


Ronald Turgeon

     v.                                Civil No. 93-101-B

Michael J. Cunningham, Warden,
New Hampshire State Prison


**O R D E R**


The State of New Hampshire has moved for reconsideration of my March 17, 1994 Order denying its motion to dismiss Ronald Turgeon's habeas corpus petition.  For the following reasons, the State's motion is granted, and the March 17, 1994 Order is vacated.

## I.  FACTS

In February 1989, Turgeon was charged with four counts of felonious sexual assault and one count of indecent exposure.  He plead not guilty to all charges, and the case was tried before a jury in November 1989.

On August 17, 1989, the Merrimack County Superior Court appointed Attorney Ray Raimo to represent Turgeon.  According to Raimo's billing records, he contacted Turgeon five times between August 17 and October 16, 1989 regarding the upcoming trial:

1

twice by letter, twice by phone, and once in a face to face meeting which lasted approximately two hours and fifteen minutes.

Turgeon was unsatisfied with Raimo's performance. Four weeks before trial, Turgeon filed a motion requesting that the superior court dismiss Raimo from his case. Turgeon alleged, inter alia, that Raimo failed to maintain contact with him and failed to inform him of trial tactics and strategy. The superior court did not entertain the motion and the case proceeded to trial.

On the first day of trial, the State's attorney called seven year-old Angela to the stand, one of Turgeon's alleged victims. Turgeon was in the courtroom, seated next to Attorney Raimo. The trial record reflects that Angela was nervous, scared and embarrassed about testifying. During direct examination, Angela identified Turgeon by name. However, when asked if he was in the courtroom, she responded in the negative. In order to help Angela identify Turgeon, the State's attorney approached each person in the courtroom, had them stand and then asked Angela if she recognized them. Angela's response to the first twenty-one people pointed out by the State's attorney was "no", she did not recognize them. Turgeon was the twenty-second person. When the State's attorney reached Turgeon, the dialogue was as follows:

```
Q:    Can you recognize this man?
A:    Um, I think.
Q:    Who do you think he is?
A:    Um, Ron.
Q:    All right. Do you think or do you know?
A:    I think.
Q:    Has it been a long time since you saw him?
A:    Yep.
```

The State's attorney went on to point out fourteen more people, some of whom Angela recognized and could identify by name. Raimo did not object to the manner in which the State's attorney had Angela identify Turgeon.[1]

Overall, the State called seven witnesses, including Angela and Lisa, the other alleged victim. Raimo effectively cross-examined these witnesses. After the State rested, Raimo called three defense witnesses: eight year-old Daniel, who was present at the scene of one of the alleged sexual assaults; five year-old Corina, Turgeon's daughter, who was also present at the scene of one of the alleged sexual assaults and at the scene of the indecent exposure; and Louisa Turgeon, petitioner's wife. At the end of the second day of trial, the defense rested.

On December 1, 1989, the jury found Turgeon guilty of the indecent exposure charge and one count of felonious sexual

---

[1]Raimo raised an objection at the outset of the identification process. However, the prosecutor rephrased his question and Raimo did not renew his objection.

assault against Angela.

Attorney Charles Flower represented Turgeon at his sentencing hearing held on February 9, 1990. The superior court sentenced Turgeon pursuant to N.H. Rev. Stat. Ann. § 651:6. After making findings of fact regarding the nature of the offenses for which Turgeon was convicted, his criminal background, and his propensity to sexually abuse young girls, the superior court sentenced him to an extended term of imprisonment of from ten to 30 years on the felonious sexual assault conviction, and a consecutive term of from two to five years imprisonment on the indecent exposure conviction.

Turgeon appealed his conviction to the New Hampshire Supreme Court. Initially proceeding pro se, Turgeon filed numerous motions with the court. Subsequently, Turgeon was appointed appellate counsel. On December 2, 1991, counsel filed an amended notice of appeal which contained the following three issues:

> I. Whether the Superior Court erred as a matter of law/abuse of discretion in denying Defendant's Motion for Dismissal due to the insufficiency of the evidence presented by the State to show the Defendant's actions were perpetrated for the purpose of sexual gratification?

4

II. Whether the Superior Court abused its discretion or, in the alternative, erred as a matter of law in denying Defendant's Motion to Dismiss the charge of indecent exposure due to the State's presentation of insufficient evidence to prove a requisite mental intent to expose the Defendant's genitals?

III. Whether the Superior Court erred as a matter of law in allowing the State to have the Defendant identified to the jury in an overly suggestive procedure whereby alternative individuals were eliminated until the victim/witness was left with a choice of identifying her father or the defendant as the perpetrator?

On February 4, 1992, the supreme court directed appellate counsel to file a statement of reasons why the court should accept Turgeon's case for briefing and oral argument. With respect to issues one and two, the supreme court also directed appellate counsel to make a succinct statement as to why the evidence was insufficient as a matter of law.

On February 28, 1992, appellate counsel withdrew issues one and two from the supreme court's consideration, stating that he was acting with Turgeon's consent. Appellate counsel chose to focus the appeal on the issue of the in-court identification procedure.

On March 12, 1992, Turgeon filed a motion with the supreme

5

court stating that he had not consented to appellate counsel's withdrawal of issues one and two. Nevertheless, on March 31, 1992, the court declined to accept Turgeon's appeal, citing New Hampshire Supreme Court Rule 7(1).

On July 30, 1992, Turgeon, proceeding pro se, filed for state habeas corpus relief with the superior court. In his state petition Turgeon raised, inter alia, claims of ineffective assistance of counsel, suggestive in-court identification, insufficiency of the evidence, and imposition of an unlawful sentence. The superior court held a hearing on the petition on December 11, 1992. None of Turgeon's previous attorneys appeared to testify at the hearing. Moreover, no witnesses were called to testify. The hearing consisted solely of Turgeon's unsworn statements. On December 24, 1992, the superior court denied Turgeon habeas corpus relief.

On March 11, 1993, Turgeon appealed the superior court's decision to the New Hampshire Supreme Court. On June 2, 1993, the supreme court declined to accept Turgeon's appeal, citing New Hampshire Supreme Court Rule 7(1).

On two prior occasions, April 27, 1992 and January 22, 1993, Turgeon filed for federal habeas corpus review in this court. On both occasions this court dismissed the habeas petitions as mixed

6

petitions because they contained unexhausted ineffective assistance of counsel claims. A review of the record indicates that Turgeon has now exhausted his state remedies.

## II. DISCUSSION

Turgeon raises five claims in his present petition. First, he asserts that he received ineffective assistance of counsel at trial and at his sentencing hearing. Second, he contends that during trial he was subjected to an overly suggestive in-court identification procedure. Turgeon's third and fourth claims are identical to the two insufficiency of the evidence claims appellate counsel allegedly waived during Turgeon's appeal to the supreme court. Finally, Turgeon argues that the sentence he received was illegal, in that it was disproportionate to the offense for which he was convicted.

The State contends that Turgeon's attorneys were not ineffective, and that he is procedurally barred from raising the remaining four claims because he defaulted on the claims in state court.

### A. THE COURT'S MARCH 17, 1994 ORDER

In my March 17, 1994 Order, I denied the State's motion to dismiss because I concluded that: (1) Turgeon was entitled to an

7

evidentiary hearing on his ineffective assistance of counsel claims; and (2) the State had failed to establish that Turgeon procedurally defaulted on his remaining claims.

After considering the State's motion for reconsideration, I have concluded that my March 17, 1994 Order should be vacated because the Order was based on several erroneous legal conclusions. First, I mistakenly evaluated the State's motion as if it were a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when, in reality, I should have treated the motion as a motion for summary judgment.[2] See <u>Browder v. Director, Dept. of</u>

---

[2]The State captioned its motion a "Motion to Dismiss," but did not identify the rule on which it was based. Nor did the State describe the standard of review which it contended should govern the motion. Because the State routinely files motions to dismiss pursuant to Rule 12(b)(6) in habeas corpus cases, I treated the motion as if it had been filed under Rule 12(b)(6).

In the future, the State should not file motions to dismiss in habeas corpus cases assigned to me for decision. Pursuant to Rule 4 of the rules governing Section 2254 cases in the United States District Courts, the court is required to review each petition and determine whether it should be dismissed before respondent is required to answer the petition. In the rare case where the State is ordered to answer a petition that fails, in the State's view, to satisfy the Rule 4 standard, the State may file a motion to reconsider the court's Rule 4 determination in lieu of an answer. Otherwise, it must answer the petition in the manner contemplated by Rule 5. If, after answering the petition, the State contends that it is entitled to judgment as a matter of law on the petition and record produced with the answer, it may move for summary judgment. For example, if the State contends that the petition should be dismissed because it contains unexhausted claims, it should move for summary judgment on this

8

Corr., 434 U.S. 257, 269 n.14, reh'g denied, 434 U.S. 1089 (1978) (recognizing that a Rule 12(b)(6) motion is not an appropriate motion in habeas corpus litigation). Second, I erroneously concluded that an evidentiary hearing was required to resolve Turgeon's ineffective assistance of counsel claims when I first should have directed the State to produce a transcript of the December 1, 1992 state court hearing on these claims. Finally, in evaluating the State's procedural default argument, I mistakenly presumed that the state supreme court reached the merits of Turgeon's federal claims when it dismissed both his direct appeal and his habeas corpus appeal without explanation. See, e.g., Harris v. Reed, 489 U.S. 255, 263 (1989). I discuss these latter two errors in greater detail below.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In Keeney v. Tamayo-Reyes, 112 S.Ct. 1715, 1721 (1992), the Supreme Court held that a habeas corpus petitioner is entitled to an evidentiary hearing in federal court only if he can show

---

basis. After I review the answer and any motion for summary judgment filed by the State and any objections filed by the petitioner, I will determine whether discovery is warranted under Rule 6, whether the record should be expanded pursuant to Rule 7, and whether an evidentiary hearing is necessary pursuant to Rule 8.

either: (1) "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure"; or (2) "that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing."  Id. Since Turgeon does not allege facts that would entitle him to an evidentiary hearing under the rule announced in Keeney, I determine that he is not entitled to an evidentiary hearing.[3]

The State has not produced a transcript of the hearing upon which the state court based its denial of Turgeon's ineffective assistance claims.  Although I am required to presume that the State court's factual findings are correct, see 28 U.S.C. § 2254(d); but cf. Chakouian v. Moran, 975 F.2d 931, 934 (1st Cir. 1992) (noting that mixed questions of fact and law are reviewed de novo in habeas corpus cases), I cannot evaluate the findings made by the state court without the transcript of the hearing on which those findings are based.  Accordingly, the State is

---

[3]Notwithstanding the State's argument to the contrary, I do not construe Keeney to hold that I am precluded from conducting an evidentiary hearing on a habeas corpus petition when I determine that such a hearing would be helpful in resolving an issue raised in the petition.  Keeney merely dispenses with the requirement that I hold an evidentiary hearing except in situations where the petitioner can meet either the cause and prejudice test or the fundamental miscarriage of justice standard.  See Keeney, 112 S.Ct. at 1727 (O'Connor, J., dissenting); Pagan v. Keane, 984 F.2d 61, 64 (2nd Cir. 1993).

10

directed to produce a transcript of the hearing on or before May 30, 1994. I will determine whether to schedule an evidentiary hearing on Turgeon's ineffective assistance of counsel claims after I review the hearing transcript.

## C.    PROCEDURAL DEFAULT

The State contends that Turgeon is procedurally barred from raising his remaining claims in federal court. In resolving this contention, I must first determine whether the New Hampshire Supreme Court relied on state procedural grounds in dismissing Turgeon's appeals. If it did, Turgeon will not be entitled to raise his claims here unless he can establish either: (1) cause for failing to comply with the state rule and prejudice resulting from the failure; or (2) that a fundamental miscarriage of justice would result from the application of the state rule. Coleman v. Thompson, 111 S.Ct. 2546, 2565, reh'g denied, 112 S.Ct. 620 (1991). I begin by determining whether the New Hampshire Supreme Court relied on state procedural grounds in dismissing Turgeon's appeals.

1.    Determining Whether a State Court Judgment is
      Based on State Law

It is often difficult to determine whether a state court has

11

based its dismissal of an appeal on state or federal grounds. The Supreme Court attempted to address this difficulty in Harris v. Reed, where the court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." 489 U.S. 255, 263 (1989). Just two years later, however, the court substantially narrowed this holding, stating that in order for the Harris presumption to apply, "the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." Coleman, 111 S.Ct. at 2559. In the present case, the Supreme Court's dismissal of both Turgeon's habeas corpus appeal and his direct appeal are unexplained. Moreover, I find nothing in the record suggesting that either decision either rested primarily upon federal law or was interwoven with federal law. Accordingly, I may not rely on the Harris presumption in resolving this issue.

In Ylst v. Nunnemaker, the Supreme Court examined how a district court should determine the basis for an unexplained state court denial of a habeas corpus petition. 111 S.Ct. 2590, 2594 (1991). In such cases, the Court held that a district court

12

must apply the following presumption:

> Where there has been one reasoned state
> judgment rejecting a federal claim, later
> unexplained orders upholding that judgment or
> rejecting the same claim rest upon the same
> ground. If an earlier opinion "fairly
> appears to rest primarily upon federal law,"
> Coleman, 111 S.Ct. at 2591, we will presume
> that no procedural default has been involved
> by a subsequent unexplained order that leaves
> the judgment or its consequences in place.
> Similarly, where . . . the last reasoned
> opinion on the claim explicitly imposes a
> procedural default, we will presume that a
> later decision rejecting the claim did not
> silently disregard that bar and consider the
> merits.

Id.

Accordingly, I look to the superior court's Order denying Turgeon's habeas corpus petition to determine its basis. In this Order, Judge William O'Neil stated:

> With the exception of Mr. Turgeon's
> allegation of ineffective assistance of
> counsel, most, if not all, of Mr. Turgeon's
> complaints are those that are the subject of
> a direct appeal and [sic] the Supreme Court
> of New Hampshire. The New Hampshire Supreme
> Court declined defendant's appeal, therefore,
> those matters are not before this court on
> the petition for writ of habeas corpus.
>
> Although not required to do so, the court
> will briefly address some of Mr. Turgeon's
> concerns.

Although Judge O'Neil did not explain the basis for his

13

conclusion that he was not required to reach the merits of Turgeon's claims, I conclude that he applied several accepted state procedural rules limiting his authority to consider claims raised in habeas corpus petitions.  First, with respect to the suggestive identification claim, Judge O'Neil merely recognized the obvious limitation on his authority to grant habeas corpus relief on a ground that had been presented to the state supreme court and had been found by that court to be an insufficient basis to justify a new trial.  Second, with respect to the insufficiency of the evidence claims, Judge O'Neil relied on the well-established state rule that matters raised in a notice of appeal but later withdrawn are waived.  Humphrey v. Cunningham, 133 N.H. 727, 732, 584 A.2d 763, 766 (1990); Stewart v. Cunningham, 131 N.H. 68, 71, 550 A.2d 96, 98 (1988).  Finally, with respect to the unlawful sentence claim, Judge O'Neil based his decision on the rule that claims that are known to the defendant but not raised in a direct appeal are waived.  Avery v. Cunningham, 131 N.H. 138, 143, 551 A.2d 952, 955 (1988); but see, Humphrey, 133 N.H. at 732, 584 A.2d at 766 ("A petitioner . . . may collaterally attack a proceeding by filing a petition for writ of habeas corpus after the time for a direct appeal has expired, if he can establish a harmful constitutional error.").

14

Since Judge O'Neil's disposition of both the insufficiency of the evidence claims and the disproportionate sentencing claim were based upon state law, I follow Ylst and presume that the Supreme Court's later disposition of the petition was based upon the same grounds. Because Turgeon has produced no evidence to rebut this presumption, I conclude that these claims were denied on the basis of state law.

With respect to the suggestive identification claim, Judge O'Neil's conclusion was based on his inability as a superior court judge to overrule a decision of the supreme court. This aspect of his decision thus provides no clues as to the basis for the supreme court's disposition of this claim. Accordingly, I cannot rely on the Ylst presumption to determine the basis for the Supreme Court's unexplained disposition of the suggestive identification claim. Nevertheless, I must still determine "if the petitioner is in custody pursuant to a state court judgment that rests on an independent and adequate state ground." Id. at 2258.

The New Hampshire Supreme Court has steadfastly refused to consider the merits of claims that are not properly preserved by a contemporaneous objection at trial. State v. Wong, --- N.H. ---, 635 A.2d 470, 476-77 (1993); State v. Santana, 133 N.H. 798,

807-08, 586 A.2d 77, 83 (1991); State v. Johnson, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988). Turgeon's state supreme court notice of appeal and his brief statement in support of his request for appeal candidly concede that his suggestive identification claim was not preserved by a contemporaneous objection. Since there is no evidence in the record suggesting that the supreme court based its dismissal of this claim on any federal ground, I conclude that the state supreme court followed its consistent practice and declined to consider the suggestive identification claim because it was not preserved by a contemporaneous objection. See, e.g., Coleman, 111 S. Ct. at 2559 ("[i]n the absence of a clear indication that a state court rested its decision on federal law, a federal court's task will not be difficult").

2. Determining When There is Cause for a Procedural Default

Turgeon does not attempt to rely on the miscarriage of justice exception to the procedural default rule. Thus, I turn to his claim that there was "cause" for his defaults in state court.

a. Suggestive identification claim

Turgeon asserts that his failure to preserve his suggestive identification claim should be excused because his trial counsel

16

was constitutionally ineffective.  I agree that a claim of constitutionally ineffective assistance of counsel can serve as "cause" for a procedural default.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  However, I am not in a position to evaluate this claim on the present record because I have not yet been provided a copy of the hearing transcript where Turgeon was given an opportunity to establish his ineffective assistance claim.  Accordingly, I will defer judgment on this claim until I have an opportunity to review this transcript.

### b.  Insufficiency of the evidence and disproportionate sentencing claims

Turgeon argues that he failed to preserve his sufficiency of the evidence claims and disproportionate sentencing claims because his appellate counsel was ineffective.  While ineffective assistance that satisfies the test established in Strickland v. Washington, 466 U.S. 668, 690 (1984), can serve as a "cause" for a failure to preserve an issue on appeal, Murray, 477 U.S. at 491, Turgeon never claimed in state court that his appellate counsel was ineffective.  Moreover, he is barred from relying on this argument in his federal habeas corpus claim because he has not attempted to explain his failure to raise this claim in state court.  Murray, 477 U.S. at 489 (ineffective assistance claim

17

that is asserted as a "cause" for a procedural default must ordinarily be litigated in state court). Turgeon did argue in state court that he should have been allowed to raise his insufficiency of the evidence claims on appeal because he did not give appellate counsel permission to withdraw these claims. However, appellate counsel's failure to recognize or raise an issue on appeal will not, by itself, constitute cause for a procedural default. See Id. at 492. Accordingly, Turgeon is barred from raising his insufficiency of the evidence and unlawful sentence claims.

## III.  CONCLUSION

The State's motion for reconsideration (document no. 24) is granted and my March 17, 1994 Order is vacated. The State's motion to dismiss (document no. 13) is granted in part. Turgeon's sufficiency of the evidence and disproportionate sentencing claims were resolved in state court on independent and adequate state grounds. Accordingly, he may not obtain review of these claims in federal court. The State is ordered to produce a transcript of the December 11, 1992 hearing at which petitioner raised his ineffective assistance claims in state court. After reviewing this transcript, I will determine whether to hold an

18

evidentiary hearing on Turgeon's remaining claims.

    SO ORDERED.


                          _____
                          Paul Barbadoro
                          United States District Judge

May 5, 1994

cc:  Ronald Turgeon
     Mark D. Attorri, Esq.
     S. David Siff, Esq.