Hillsborough
No. 88-447

THE STATE OF NEW HAMPSHIRE

v.

KENNETH TUCKER

May 24, 1990

*John P. Arnold,* attorney general (*Peter G. Beeson,* senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   In this appeal of a theft conviction, the defendant claims the Superior Court (*Pappagianis, J.*) erred in refusing to sup-

press evidence taken under a search warrant specifically authorizing seizure of the items in dispute, but containing a further, general mandate to search for other evidence of the crime in question. We affirm.

The record indicates that an individual identified as the defendant, Kenneth Tucker, opened an account at the Derry Bank and Trust Company in February, 1987, and two months later availed himself of banking privileges by cashing six checks drawn on a fictitious Bank of New Hampshire account identified with a non-existent corporation, International Venture Co., Inc. The checks were returned unpaid, and a police investigation led to the issuance of a warrant to search certain premises for "International Ventures Co. Inc. Checks, copies of checks, [and] other items used in the commission of the crime." The search netted blank checks of the sort described, carbons of the six checks cashed at the Derry Bank, and a miscellany of other items including a typewriter, "desk organizer," bank money bag, telephone, "paperwork," rubber stamp and so on.

Insofar as it now concerns us, the defendant's motion to suppress evidence attacked the authorization to seize "other items used in the commission of the crime" as "a general warrant in contravention of part I, article XIX, New Hampshire Constitution; Amendments IV and XIV, United States Constitution." The motion was denied without evidentiary hearing, on the prosecutor's representation that the State would not seek to introduce any evidence seized under the "other items" clause, but would offer only the materials taken under the specific authorization to seize blank checks and carbons of checks issued. Accordingly, only the blank checks and carbon copies were entered as exhibits, subject to objection. (Although there was some testimony from a State's witness about the other items seized, the defendant assigns no error to its reception, presumably on the ground that any such mistake was at most harmless, as it seems to us to have been.)

Simply put, the defendant's position is that the general authorization to seize "other items used in the commission of the crime" rendered the entire warrant "general," as outlawed by the fourth amendment's prohibition on issuing warrants without "particularly describing the . . . persons or things to be seized," and by the requirement of article 19 that warrants "be . . . accompanied with a special designation of the persons or objects of search, arrest, or seizure." For authority mandating suppression of all evidence seized under such a warrant, the defendant refers us to *State v. Emery*, 123 N.H. 630, 465 A.2d 922 (1983); *State v. Sheedy*, 124 N.H. 738, 474

A.2d 1042 (1984); and *United States v. Abrams*, 615 F.2d 541, 544 (1st Cir. 1980).

Each element of the defendant's position yields to scrutiny, however, beginning with the characterization of the warrant. Although litigation early in the reign of George III concentrated the opposition's scorn upon warrants to search for merely incriminating papers or other "mere evidence," *compare Entick v. Carrington*, 19 Howell's State Trials 1029 (1765), *with Warden v. Hayden*, 387 U.S. 294 (1967), the characteristic American antagonism to the warrant practice of the day condemned the excessive generality of non-returnable authorizations to search any place for evidence of criminal wrongdoing, *see United States v. Klein*, 565 F.2d 183, 186 (1st Cir. 1977), as exemplified by the writs of assistance issued to advance the enforcement of the revenue laws, and anathematized by Otis, *see id.*; 2 THE LEGAL PAPERS OF JOHN ADAMS 107–08 (L.K. Wroth & H.B. Zobel, eds. 1965). The present writ is different, of course. It was returnable according to the statute, *see* RSA 595-A:5; it identified the place to be searched with a particularity not questioned here; and it described specific items to be seized, quite apart from the catchall reference to "other items."

■ The fact that the present warrant is not "general" in the preconstitutional sense does not, however, tell us anything dispositive about the constitutional significance of its "other items" clause. For, on its face, this expansive language implicates the constitutional standards demanding the special designation or particular description of the objects of a search, particularity requirements addressing that feature of the objectionable eighteenth century practice that invested the executive officer, not a magistrate, with discretion to determine the scope of the search, *see Marion v. United States*, 275 U.S. 192, 195–96 (1927), and thus to engage in "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The degree of required exactitude is not readily described in the abstract, however, *see State v. Fitanides*, 131 N.H. 298, 300–01, 552 A.2d 1379, 1380 (1988), *cert. denied*, 109 S. Ct. 2100 (1989). It is true, on the one hand, that a generic description of goods may pass muster when the seizable nature of all possible examples is apparent, as in the case of contraband, *see United States v. Klein*, 565 F.2d 183, 187–88 (1st Cir. 1977), or when probable cause has been demonstrated for believing that any example of generically described objects is likely to have evidentiary character, *see id.; see also State v. Emery*, 123 N.H. 630, 633, 465 A.2d 922, 924 (1983). But

the soundest generalization probably is that generic descriptions are inadequate whenever it is reasonably possible for a warrant's applicant or issuing magistrate to narrow its scope by using descriptive criteria for distinguishing objects with evidentiary significance from similar items having no such value, *see Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324, 326–27 (1st Cir. 1978); *State v. Fitanides, supra* at 301, 552 A.2d at 1380. *But compare Andresen v. Maryland*, 427 U.S. 463, 479–82 (1976) ("other items used . . ." not unduly broad in context of particularized listing), *and State v. Emery supra* (same), *with* 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(d), at 251–52, 252 n.81 (1987) (*Andresen* best read as legitimating catchall language only where more particularized descriptions not feasible).

There is good reason to conclude that this rule was unsatisfied by the general clause in the instant case, given the ready possibility of describing "other items" more exactly. There was, for example, probable cause to believe that a check-imprinting machine with likely evidentiary value would be found among other evidence of fraudulent activity, although none was listed as subject to seizure. In any event, anticipating the analysis that follows, we will assume that the rule was not honored, that the "other items" clause was itself unconstitutionally general under both State and National standards, and that if the warrant before us had purported to authorize search and seizure by means of the general clause alone, any evidence obtained would be subject to suppression, *see Stanford v. Texas*, 379 U.S. 476, 480–81 (1965); *cf. State v. Fitanides, supra* at 300, 552 A.2d at 1830.

This warrant did not purport to confer authority by general language alone, however; it is a composite of the general clause joined with very particularized directions to seize the evidence actually introduced. It is, indeed, the existence of these specific descriptions within the warrant, together with the State's reliance on them in obtaining the evidence in question, that render inapposite the cases cited by the defendant in urging wholesale suppression of everything seized. Thus, although the warrant in *State v. Emery supra* contained a general phrase appended to a series of specifics, the evidence in issue there was seized under the general clause (and its introduction sustained because no more precise description was thought to have been possible). And both *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980), and *State v. Sheedy*, 124 N.H. 738, 474 A.2d 1042 (1984) reviewed entirely general descriptions (in the latter

case, contained in a warrant issued under a special statute requiring particularity of description). These cases are no authority for plenary suppression on our facts.

The defendant, moreover, fails to attend to a considerable body of law that determines the admissibility of evidence seized under a composite search warrant, having both specific and general authorizations, by redacting the unduly general description and treating the residue of the warrant as efficacious, if it meets the usual tests of validity. *See, e.g., United States v. Christine,* 687 F.2d 749, 753–60 (3d Cir. 1982). This approach commends itself simply because it is, without undue cost, an adequate method for realizing the pragmatic, deterrent objectives invoked to explain the use of an exclusionary rule to vindicate guarantees like those of the fourth amendment and article 19, which are not self-executing. *See id.* at 757; *United States v. Calandra,* 414 U.S. 338, 347–48 (1974). While these constitutional provisions do not provide for the exclusion of evidence seized in violation of their terms, a rule precluding the use of such evidence (subject to exceptions that need not detain us here) is thought to deter illegal searches and preserve judicial integrity, *see United States v. Christine supra; United States v. Leon,* 468 U.S. 897, 906 (1984); *Mapp v. Ohio,* 367 U.S. 643, 658–59 (1961). In the usual case, of course, all the evidence seized under a warrant tainted by some constitutional defect is suppressed simply because the seizure of every item is entirely attributable to the defect. When the warrant's fault is not so pervasive, however, the same objectives of deterrence and integrity may be served in the same way and to the same degree by limiting suppression to the fruits of the warrant's unconstitutional component. That component may thus be shorn of its unlawful advantage by suppressing only the fruits attributable to it, while the courts may at the same time fully recognize the value of evidence taken under another component of a composite warrant meeting constitutional standards, including the particularity requirements.

It is true, of course, that the price of including unconstitutionally general language in an otherwise valid warrant could be raised even higher by suppressing all the fruits of such a warrant, but there are good reasons against going so far. It is a wholly open question whether raising the penalty for adding unduly broad language to a sufficiently particular authorization to search would add any increment to the deterrent influence of suppressing only the fruits of the warrant's illegal element. That being so, it is not apparent why the public interest in prosecuting crime should be taxed by suppressing

any evidence beyond that obtained under the ostensible authority of the warrant's unduly general element. It is, indeed, important here to remember a significant distinction between evidentiary exclusion and a tort remedy against an official who conducts an unreasonable search: whenever evidence is suppressed under the fourth amendment or article 19, the price is paid by the public, not by the official who acts unlawfully. Thus, the defendant's plea for imposing the heaviest possible suppression penalty for using general language in a composite warrant is not supportable by any analogy with the common law rule that a government agent who legally enters private property but thereafter exceeds the scope of official authority becomes a trespasser *ab initio*, and liable accordingly. *See* 1 F.V. HARPER, F. JAMES & O.S. GRAY, THE LAW OF TORTS § 1.21 (2d ed. 1986); W.P. KEETON, D.B. DOBBS, R.E. KEETON & D.G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 25, at 150–52 (5th ed. 1984).

We should also note the anomaly that would result if courts ordered plenary suppression in response to a composite warrant, given the fact that the remedy for searches and seizures beyond the scope of a wholly specific warrant extends no further than suppression of the items obtained by exceeding that scope (at least in cases evincing no flagrant disregard of the warrant's terms), *see United States v. Heldt*, 668 F.2d 1238, 1259 (D.C. Cir. 1981), *cert. denied*, 456 U.S. 926 (1982); *State v. Valenzuela*, 130 N.H. 175, 196–97, 536 A.2d 1252, 1257 (1987), *cert. denied*, 485 U.S. 1008 (1988) (deciding fourth amendment claim). Since discrete suppression thus suffices to reconcile private and public interests when the executive branch alone has violated the constitutional guarantee by exceeding a warrant's authority, it would be difficult to justify a more draconian remedy when the violation would not occur but for a judicial error in employing too general a catchall phrase in an otherwise proper warrant.

■ Hence the force of the rule derived from the holding of *Aday v. Superior Court of Alameda County*, 55 Cal. 2d 789, 13 Cal. Rptr. 415, 362 P.2d 47 (1961), that general clauses are severable from a warrant's otherwise specific directives in the absence of any indication that the specific directives were mere pretexts for deliberately issuing an unconstitutionally general direction. Since *Aday*, this concept of redaction or severance has recommended itself to State courts in *State v. Warren*, 226 Neb. 810, 415 N.W.2d 152 (1987); *State v. Noll*, 343 N.W.2d 391, 395–99 (Wis.), *cert. denied*, 469 U.S. 837 (1984); *State v. Kealoha*, 62 Haw. 166, 177–79, 613 P.2d 645, 652–53 (1980); *United States v. Ketterman*, 276 A.2d 243, 246–47 (D.C.

1971); *cf. State v. Cockrell*, 102 Wash. 2d 561, 570–71, 689 P.2d 32, 37–38 (1984) (severance invoked where warrant was partially defective for lack of probable cause); *Commonwealth v. Lett*, 393 Mass. 141, 145–46, 470 N.E.2d 110, 114 (1984) (same); *People v. Hansen*, 38 N.Y.2d 17, 21, 377 N.Y.S.2d 461, 464–65, 339 N.E.2d 873, 875 (1975) (same), and to at least four of the federal circuits, in *United States v. Krasaway*, 881 F.2d 550, 553 (8th Cir. 1989); *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977 (1984); *United States v. Christine*, 687 F.2d 749, 753–60 (3d Cir. 1982); *United States v. Cook*, 657 F.2d 730, 734–36 (5th Cir. 1981); *cf. United States v. Diaz*, 841 F.2d 1, 4 (1st Cir. 1988) (warrant partially defective for lack of probable cause). *But see Kinsey v. State*, 602 P.2d 240, 242–43 (Okla. Crim. App. 1979) (catchall phrase rendered entire warrant illegal, necessitating suppression of items seized pursuant to its particularized portions).

■■ For the same reasons, we adopt the rule here, for the enforcement not only of the fourth amendment's particularity requirement, but that of article 19 as well. Both provisions reflect a common intent to constitutionalize the protection of individual rights that had evolved at common law, *see Boyd v. United States*, 116 U.S. 616, 625 (1886); *Hussey v. Davis*, 58 N.H. 317 (1878), and since no reason has been advanced for adopting a State suppression remedy broader than its federal counterpart for enforcing the particularity requirement, there is no ground to treat the issue differently under the two constitutional provisions in question. There being no question that the blank checks and check copies fell within the warrant's specific description of evidence subject to seizure, the motion to suppress was properly denied.

*Affirmed.*

BROCK, C.J., and BATCHELDER, J., concurred in the result; the others concurred.