Hillsborough
No. 91-229

THE STATE OF NEW HAMPSHIRE

v.

WESTON STOW

February 12, 1993

*John P. Arnold*, attorney general (*Donald Feith*, senior assistant attorney general, on the brief and orally), for the State.

*Brian F. O'Connor*, of Manchester, by brief and orally, for the defendant.

BROCK, C.J. The defendant was convicted by a jury in the Superior Court (*Mangones*, J.) of one count of kidnapping, RSA 633:1, six counts of aggravated felonious sexual assault, RSA 632-A:2, and one count of attempted aggravated felonious sexual assault, RSA 629:1; RSA 632-A:2. On appeal he contends that he was denied the right to a speedy trial under part I, article 14 of the New Hampshire Constitution and the sixth amendment of the United States Constitution, and that he was deprived of due process of law and effective assistance of counsel as guaranteed by the State and Federal Constitutions when the Superior Court (*Dalianis*, J.) denied his request for funds for expert services. *See* RSA 604-A:6. We affirm.

The defendant's convictions resulted from an incident which occurred in Nashua on July 22–23, 1988. On July 29, 1988, the defendant was arrested in Massachusetts for a Massachusetts parole violation stemming from the New Hampshire incident. On August 1, 1988, the Nashua Police Department lodged a detainer with the Massachusetts correctional authorities for the defendant and a fugitive from justice complaint was filed in the Massachusetts District Court.

On August 2, 1988, the defendant was charged in Massachusetts with lewd and lascivious behavior arising from a separate incident which occurred on July 20, 1988.

On October 20, 1988, the defendant was indicted by the Hillsborough County Grand Jury on the instant charges. A capias was issued on November 23, 1988, and on November 30 the State of New Hampshire requested temporary custody of the defendant under Article IV of the Interstate Agreement on Detainers, RSA 606-A:1. On January 6, 1989, a Hillsborough County sheriff went to Massachusetts to bring the defendant back to New Hampshire to face the charges against him, but the defendant declined to allow his voluntary transfer.

In March 1989, New Hampshire began formal extradition proceedings. Soon thereafter the State became aware that the August 2, 1988 lewd and lascivious conduct charge was scheduled for a September 15, 1989 trial in Massachusetts. The State then chose to let Massachusetts complete its prosecution of the defendant before extraditing him to New Hampshire. The Massachusetts proceedings were concluded in January 1990, when the defendant pled guilty to the charge pending against him.

In July 1990, the defendant's case was scheduled for trial in New Hampshire on October 22, 1990. On August 8, 1990, the State made a second request under the Interstate Agreement on Detainers for temporary custody of the defendant to which he consented on August 20. On September 7, 1990, the defendant was arrested by the Hillsborough County Sheriff's Department on the November 23, 1988 capias and returned to New Hampshire.

On October 16, 1990, the defendant moved to dismiss the New Hampshire charges on speedy trial grounds. On October 19 he requested a continuance, and the case was rescheduled for November 1990. In November a jury was impaneled but subsequently dismissed because a juror discussed a newspaper article concerning the defendant with other jurors. A second trial was held from December 3 through 13, 1990, which resulted in the instant convictions.

■■ The defendant argues that the delay in this case of over two years between indictment and trial violated both the federal and State guarantees of a right to a speedy trial and thereby requires that the charges against him be dismissed. In support of his position he first points to the Superior Court Speedy Trial Policy which provides that a show cause hearing will be scheduled for felony cases pending after four months from date of indictment where the defend-

ant is incarcerated, at which hearing the trial judge will decide whether to dismiss the case for lack of a speedy trial. *See* SUPER. CT. R. app. The defendant suggests that because a hearing was not held until approximately twenty months after his indictment, he was clearly denied his right to a speedy trial under these guidelines. As we stated in *State v. Perron*, 122 N.H. 941, 951–52, 454 A.2d 422, 428 (1982), "[t]he policy does not, and is not intended to, result in mandatory dismissal of cases merely because they may exceed the guideline time frames." We therefore reject the defendant's contention that the policy guidelines are determinative of this issue and proceed to analyze his speedy trial claim under the State Constitution. A separate federal constitutional analysis is not necessary because we utilize the same test in each instance. *See State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988) (court utilizes same test under State Constitution as that enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972)).

In determining whether the defendant has been deprived of his right to a speedy trial, we balance the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *State v. Quinlan*, 122 N.H. 51, 52, 440 A.2d 13, 14 (1982). This court places "[s]ubstantial emphasis" on the last two factors. *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 736, 584 A.2d 763, 768 (1990).

The delay in this case is measured from the date of indictment on October 20, 1988, *see State v. Collins*, 115 N.H. 499, 502, 345 A.2d 162, 165 (1975), to the date of the trial on December 3, 1990, a period of over two years. Because such a delay is "presumptively prejudicial," *see State v. Fletcher*, 135 N.H. 605, 607, 607 A.2d 958, 960 (1992), it warrants an examination of the remaining three factors. *State v. Colbath*, 130 N.H. at 319, 540 A.2d at 1213.

The defendant argues that the reason for the delay should be "wholly attributable to the State." He suggests first that his refusal to return to New Hampshire cannot be weighed against him because it is the State's duty, not the defendant's, to be diligent in prosecution. We find this argument spurious and note that the defendant conceded before the trial court that the delay through January 1989 was assignable to him and undermined his assertion of a speedy trial violation.

The defendant also argues that the State was not diligent in its efforts to extradite him and that this inaction was motivated by bad

faith. When the defendant refused to return to New Hampshire voluntarily in January 1989, the State was forced to begin formal extradition proceedings. By that point, however, the Massachusetts charge had been set for trial and the defendant was not "available" to the State thereafter until final disposition of that charge, which occurred on January 12, 1990, when the defendant pleaded guilty. *See* RSA 606-A:1, arts. V(d) and VI(a); *Humphrey*, 133 N.H. at 734, 584 A.2d at 767 (defendant not available to State, and speedy trial right did not attach, until guilty plea in Rhode Island); *State v. Wood*, 241 N.W.2d 8, 14 (Iowa 1976) (defendant unable to stand trial in two States at same time); *United States v. Mason*, 372 F. Supp. 651, 653 (N.D. Ohio 1973) (a person standing trial in one State cannot be expected to be standing trial in another State simultaneously).

While we recognize that the State's duty to bring a defendant to trial is "not excused merely because the prisoner is incarcerated in another jurisdiction," *Humphrey*, *supra* at 735, 584 A.2d at 768 (quotation omitted), there is a distinction between incarceration in another jurisdiction awaiting resolution of pending charges and incarceration pursuant to concluded proceedings. *Compare United States v. Mason supra with Smith v. Hooey*, 393 U.S. 374 (1969). It is clear from the facts that the State made a "diligent, good-faith effort . . . to bring the defendant to trial," *State v. Monahan*, 125 N.H. 17, 22, 480 A.2d 863, 866 (1984), was ready to give the defendant a trial in early 1989, but was prevented from doing so by the defendant's own actions.

The defendant argues that the reason for the delay after January 1989 was for the State to gain a tactical advantage by using the Massachusetts conviction as evidence in the New Hampshire trial. We think that the record speaks differently. While the State may have anticipated the potential utility of a Massachusetts conviction, the circumstances of this case do not suggest that the State's decision was based on "a deliberate attempt . . . to delay the [defendant's] trial in order to hamper his defense." *Humphrey*, *supra* at 735, 584 A.2d at 768.

Further analysis of the remaining two factors convinces us that the defendant's right has not been violated. The defendant did not invoke his right to a speedy trial until October 16, 1990, twenty-four months after the indictment and twenty-one months after refusing to return to New Hampshire to stand trial. While defendant did not waive his right to a speedy trial by failing to assert it, *see State v.*

*Dufield*, 119 N.H. 28, 30, 398 A.2d 818, 819 (1979), his failure to pursue it actively weakens his contention that it was denied him. *See State v. Adams*, 133 N.H. 818, 824, 585 A.2d 853, 856 (1991). The defendant's refusal to return to New Hampshire for trial in January 1989 together with his failure to assert his right to a speedy trial at any time prior to October 1990 weighs against him. *United States v. Churchill*, 483 F.2d 268, 273 (1st Cir. 1973) (silence throughout period of delay, along with evidence defendant not prepared for trial, indicates defendant not averse to it); *State v. Weitzman*, 121 N.H. 83, 86–87, 427 A.2d 3, 5 (1981).

Finally, the defendant concedes that he cannot show actual prejudice from the delay. He argues, however, that the recent United States Supreme Court decision in *Doggett v. United States*, — U.S. —, 112 S. Ct. 2686 (1992), altered the federal constitutional analysis set out in *Barker v. Wingo*, relieving him of the burden of establishing prejudice because the delay was the result of the State's bad faith. As indicated above, the record does not support a finding of bad faith on the part of the State, and we disagree that *Doggett* is authority for the defendant to bypass a showing of prejudice. The egregious circumstances in *Doggett* are simply not present here. Balancing the conduct of the State and the defendant in light of all these factors, we conclude that the defendant's right to a speedy trial has not been violated under either the Federal or State Constitutions.

The second issue on appeal is whether the trial court abused its discretion by denying the defendant access to expert services to assess the reliability of the victim's identification of the defendant as the man who kidnapped and sexually assaulted her. Prior to trial the defendant filed a motion for services other than counsel pursuant to RSA 604-A:6, seeking funds to hire an expert psychologist to testify about problems associated with witness identification. The Superior Court (*Dalianis*, J.) denied the motion.

During a chambers conference on November 14, 1990, the defendant was apprised of the court's reasons for denying the request, which included: that the requested service was not reasonable and necessary under all of the circumstances; that there was a question as to the testimony's relevance and admissibility; that the issue of the validity of the victim's identification was a jury question; and that the request was not for a psychologist who had dealt with the victim and could testify that the victim had specific memory problems. A written order was subsequently issued in which the trial court stated: "Inasmuch as the testimony of a so-called 'identification ex-

pert' would not be allowed at trial as it would invade the province of the jury and inasmuch as 604-a:6 [*sic*] funds are in limited supply, the Court refused to authorize the expenditure of money which would be of no use to the defendant for trial purposes."

"Whether a defendant has invoked . . . fundamental fairness necessary for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts . . . lie[s] within the sound discretion of the court." *State v. Campbell*, 127 N.H. 112, 115, 498 A.2d 330, 332 (1985). While we hold in this case that the trial court did not abuse its discretion, we note that the fact that RSA 604-A:6 funds are in limited supply is not an appropriate reason for denying access and reliance upon it, without more, would constitute an abuse of discretion. The trial court, however, also relied upon other permissible grounds for denying the defendant's motion.

To successfully establish an abuse of discretion the defendant must demonstrate by clear and convincing evidence "that his request to the court included as complete a showing of necessity for the desired services as could be expected of him, and that the denial of funds substantially prejudiced him at trial." *State v. Lewis*, 129 N.H. 787, 798, 533 A.2d 358, 365 (1987). The defendant's motion requesting funds asserted that "[a]n individual's ability to remember and identify accurately . . . is a complex matter that can and should be explained to the jury by an expert in this area." Further, in his motion to reconsider it was alleged that "expert testimony will be required to show that the trauma of the incident may have caused the victim to be less scrupulous in her observations" and "to show that the certainty of the victim's identification of the accused means nothing more than that the victim is certain she believes the accused is her assailant, not that the accused is her actual assailant."

Beyond these general assertions, the defendant made no specific offer of proof as to why under the facts and circumstances of this particular case the assistance was necessary. *See State v. Fecteau*, 133 N.H. 860, 875–76, 587 A.2d 591, 600 (1991); *State v. Campbell*, *supra* at 117, 498 A.2d at 334. In addition, the defendant has failed to demonstrate that he was prejudiced by the denial of his motion. *See State v. Lewis*, *supra* at 799, 533 A.2d at 365. The jury observed the victim first hand and defense counsel adroitly and extensively cross-examined her on issues of perception and memory. This cross-examination and defense counsel's closing argument suffi-

ciently developed for the jury any weaknesses in the victim's identification testimony. Under these circumstances there was no additional need for a psychologist's impeachment testimony, and the court did not abuse its discretion in refusing to authorize such funds.

*Affirmed.*

All concurred.