Carroll
No. 91-270

### THE STATE OF NEW HAMPSHIRE

v.

### RICHARD MAYNARD

August 19, 1993

*Jeffrey R. Howard,* attorney general (*William H. Lyons,* senior assistant attorney general, on the brief), by brief for the State.

*Timothy M. Landry*, assistant appellate defender, of Concord, by brief for the defendant.

BROCK, C.J.    The defendant, Richard Maynard, was convicted of two counts of issuing bad checks, contrary to RSA 638:4 (1986 & Supp. 1989) (amended 1990) after a jury trial in the Superior Court (*Mohl*, J.). On appeal, he argues that his right to a speedy trial was violated. We affirm.

In October 1989, the defendant was a manager of Down Under Sports in Conway. He was an authorized signatory on the store's checking account at what was then known as Indian Head Bank. Down Under Sports went out of business on October 15, 1989. During the last three months of 1989, a number of checks were drawn on the store's account at Indian Head Bank and presented at North Conway Bank and Home Bank in North Conway. The checks were made payable either to the defendant or the defendant's wife, Ann Maynard. Indian Head Bank refused payment on the checks because of insufficient funds or because the store's account had been closed. Two bank employees testified that the signature on the checks appeared to be that of the defendant. The transactions at North Conway Bank and Home Bank involving the bad checks were carried out by Ann Maynard. On some occasions she was accompanied at the bank by her sister, Donna Kram. Both Ann Maynard and Donna Kram were known to the Conway police as having previously passed bad checks.

Less than two weeks before trial, the defendant filed a motion to dismiss on the ground that his right to a speedy trial had been violated. He argued that over four hundred days had passed since the two indictments were issued against him, and during that time Donna Kram had died of cancer. As part of his defense, the defendant was prepared to argue that he never signed the bad checks and that Donna Kram was likely the one who forged his name. He claimed that he was prejudiced by the delay because Kram's death had deprived him of her testimony. The trial court denied the motion to dismiss, and the defendant appeals.

In determining whether a defendant has been deprived of his right to a speedy trial under either the State or Federal Constitutions, we balance four factors: "(1) the length of the delay; (2) the reason[s] for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." *State v. Stow*, 136 N.H. 598, 602, 620 A.2d 1023, 1025 (1993); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). "This court places

substantial emphasis on the last two factors." *Stow*, 136 N.H. at 602, 620 A.2d at 1025 (quotation and brackets omitted).

The delay in this case is measured from the dates of the defendant's indictments on February 1, 1990, and March 8, 1990. *See Humphrey v. Cunningham, Warden*, 133 N.H. 727, 734, 584 A.2d 763, 767 (1990). The defendant's trial began on April 17, 1991, over 400 days after the later indictment. A delay of this length is presumptively prejudicial and warrants an examination of the remaining three factors. *See State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988).

The defendant argues that the reasons for the delay in this case are attributable to the State. The case was originally scheduled for trial in September 1990. Apparently due to an overcrowded docket, the trial was delayed until January 1991. The defendant's case was delayed again after he moved to sever his case from that being brought against Ann Maynard on related charges. The defendant's trial finally commenced on April 17, 1991. Although it appears from the record that the defendant was responsible for the delay from January to April, *see State v. Fletcher*, 135 N.H. 605, 607, 607 A.2d 958, 960 (1992) (defendant cannot take advantage of a delay he has caused), the majority of the delay must be attributed to the State. In balancing this delay against the other factors, however, we are mindful that the right to a speedy trial is relative, *State v. Varagianis*, 128 N.H. 226, 228, 512 A.2d 1117, 1119 (1986), and "must be considered with regard to the practical administration of justice," *Fletcher*, 135 N.H. at 608, 607 A.2d at 960 (quotations omitted). The delays in this case due to an overcrowded docket and scheduling difficulties are indeed held against the State, but to a lesser extent than would be a deliberate delay. *See State v. Langone*, 127 N.H. 49, 54–55, 498 A.2d 731, 735 (1985).

In considering the third factor of the *Barker* test, we note that the defendant did not assert his right to a speedy trial until he filed his motion to dismiss on April 5, 1991, less than two weeks before trial. The defendant's failure to actively pursue his right to a speedy trial weakens his argument on appeal that he was denied this right. *Stow*, 136 N.H. at 604, 620 A.2d at 1026.

The final factor is whether and to what extent the defendant has been prejudiced by the delay. As evidence of prejudice the defendant notes that (1) the length of the delay makes it presumptively prejudicial, *see Colbath*, 130 N.H. at 319, 540 A.2d at 1213; (2) the trial court found "some prejudice" in its denial of the motion to dismiss; (3) the

defendant was incarcerated pretrial on other charges; and (4) Donna Kram, a witness for the defense, died during the delay. The defendant's most serious claim of prejudice involves the death of Kram. At trial, the defendant denied having signed the checks and argued that someone had forged his signature. On appeal, the defendant asserts that Kram was likely the one who forged the checks. Kram was known to the Conway police for passing bad checks, and the defendant claims that she had access to the store's checks through her sister, Ann Maynard. The defendant argues that the unavailability of Kram impaired his defense and was thus prejudicial.

■■ A defendant may establish prejudice by showing how a delay has impaired his defense. *See Barker*, 407 U.S. at 532. The defendant's claim of prejudice in this case, however, is too speculative to be afforded much weight. *See Colbath*, 130 N.H. at 320, 540 A.2d at 1214 (speculation that defendant lost his job due to delay does not amount to significant prejudice); *see also Burkett v. Fulcomer*, 951 F.2d 1431, 1443 (3rd Cir. 1991) (rejecting speculative claim of prejudice), *cert. denied*, 112 S. Ct. 3055 (1992); *United States v. Comosona*, 848 F.2d 1110, 1114 (10th Cir. 1988) (same). The defendant presents us with nothing more than supposition to support his allegations that Kram was the one who forged the checks. The defendant fails to offer evidence or assert facts that legitimately incriminate Kram in the offenses with which the defendant was charged. Despite Kram's unavailability, the defendant was able to present his defense through his own testimony and through the arguments of counsel, asserting that he did not sign the bad checks and that other people had access to the store's checkbooks. It is entirely uncertain what Kram would have testified to if she were called as a witness by the defendant. Without a more substantiated showing of how Kram's unavailability impaired his defense, the defendant's claim of prejudice cannot be given substantial weight. We also find no prejudice to the defendant as a result of his pretrial detention on other charges.

In balancing the four *Barker* factors, we do not find that the defendant was denied his right to a speedy trial. We therefore uphold the trial court's denial of the motion to dismiss.

*Affirmed.*

All concurred.