Rockingham
No. 93-654

### THE STATE OF NEW HAMPSHIRE

v.

### TIMOTHY S. BERNABY

February 13, 1995

*Jeffrey R. Howard,* attorney general (*John A. Curran,* assistant attorney general, on the brief), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief for the defendant.

JOHNSON, J. A jury in the Superior Court (*Brennan,* J.) found the defendant guilty of simple assault, RSA 631:2-a (1986); second degree assault of a police officer, RSA 631:2 (1986) (current version at RSA 631:2 (Supp. 1994)); and resisting arrest, RSA 642:2 (1986) (current version at RSA 642:2 (Supp. 1994)). The sole issue on appeal is whether the trial court denied the defendant his right to a speedy trial. We affirm.

On May 5, 1990, the defendant was arrested. He was indicted for crimes involving New Hampshire State Trooper Keith H. Rayeski, the victim. His trial was scheduled to begin on October 15, 1990. On October 1, 1990, the defendant waived his right to a speedy trial and moved for a continuance. The court granted the defendant's motion and rescheduled his trial for April 15, 1991. On April 12, 1991, the defendant moved for a second continuance. The State agreed not to object to the motion but conditioned this agreement on the defendant's written waiver of his speedy trial right. The trial was then rescheduled for July 8, 1991. On June 22, 1991, the defendant moved for a third continuance. The trial court granted the motion and rescheduled the trial for the week of July 22, 1991. On July 22, the defendant moved for a fourth continuance and again waived his speedy trial right. The trial court granted the motion and rescheduled the trial for April 10, 1992. The defendant did not object to this delay of nearly nine months.

On March 31, 1992, the State moved to continue the trial because its key witness, Trooper Rayeski, was in the hospital after having seriously injured himself while skiing. The record reflects that Rayeski "broke virtually every bone in his body and had extensive internal injuries, was in intensive care for a period of many weeks, and [was] undergoing rehabilitation therapy on a daily basis." The State requested that the trial be rescheduled for June or July 1992. The trial court granted the State's motion. Trial was set for February 22, 1993.

On May 25, 1992, the defendant moved to dismiss based on speedy trial grounds. The trial court denied his motion. On January 7, 1993, the defendant once again moved to dismiss based on speedy trial grounds. The trial court again denied the defendant's motion.

A snowstorm struck on February 22, 1993, the scheduled trial date. The defendant mailed a fifth motion to continue to the court that morning. In his motion, the defendant claimed that this snowstorm prevented him from going to court and that one of his witnesses was to have bypass surgery the following day. The defendant did not appear for his trial. The court entered a default judgment against the defendant and denied his motion to continue. On February 23, the defendant moved to strike the default judgment, and the State agreed not to object on the condition that the defendant waive his speedy trial right. The court granted the defendant's motion on March 10.

On May 24, 1993, the trial court granted the defendant's sixth motion for a continuance. On June 29, 1993, the court denied the defendant's seventh motion for a continuance. The trial began on July 6, 1993.

■ The defendant's rights to a speedy trial derive from part I, article 14 of the State Constitution and the sixth amendment to the Federal Constitution. We begin our analysis with an examination of the protections afforded under the New Hampshire Constitution, *State v. Ball,* 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and use decisions of the United States Supreme Court only as an aid to our analysis, *see Michigan v. Long,* 463 U.S. 1032 (1983). Because the Federal Constitution does not afford the defendant greater protection in the present case, *see State v. Colbath,* 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988), we need not undertake a separate federal analysis, *see Ball,* 124 N.H. at 232, 471 A.2d at 351.

> In determining whether a defendant has been deprived of his right to a speedy trial under either the State or Federal Constitutions, we balance four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay.

*State v. Maynard,* 137 N.H. 537, 538, 629 A.2d 1345, 1345–46 (1993) (quotation and brackets omitted).

■ "The length of the delay is to some extent a triggering mechanism." *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Because the delay in this case exceeded nine months, it is presumptively prejudicial, *see Colbath,* 130 N.H. at 319, 540 A.2d at 1213, and we must examine the remaining three factors. *Maynard,* 137 N.H. at 539, 629 A.2d at 1346. "In balancing this delay against the other factors, however, we are mindful that the right to a speedy trial is relative, and must be considered with regard to the practical administration of justice." *Id.* (quotation and citations omitted).

Both the State and the defendant were responsible at various times for the delay in this case. Much of the delay attributable to the State, however, was due to Trooper Rayeski's having suffered ski injuries. A delay caused by "a valid reason, such as a missing witness," serves to justify appropriate delay. *Barker,* 407 U.S. at 531. Although the defendant did assert his right to a speedy trial, he waived the right several times and also requested numerous continuances. The defendant cannot take advantage of a delay he has caused. *State v. Fletcher,* 135 N.H. 605, 607, 607 A.2d 958, 960 (1992).

Finally, the delay here caused the defendant only minimal prejudice. Although the anxiety presumed to attend criminal charges is not to be ignored, *Barker,* 407 U.S. at 532, it does not reach a level of great importance when the defendant is unable to show that he has suffered actual prejudice. *See State v. Weitzman,* 121 N.H. 83, 87, 427 A.2d 3, 5 (1981). The defendant lost no witnesses, and no memories appear to have faded during the time in question. *See id.*

*Affirmed.*

All concurred.