Belknap
No. 96-190

### THE STATE OF NEW HAMPSHIRE

v.

### ENRICO PAONE

July 28, 1997

*Steven M. Houran*, acting attorney general (*Charles T. Putnam*, senior assistant attorney general, on the brief and orally), for the State.

*John P. Newman*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Enrico Paone, was indicted in 1992 on four counts of felonious sexual assault. *See* RSA 632-A:3 (1996). Following his apprehension in 1995, the defendant moved to dismiss the indictments, arguing that his State and federal constitutional rights to a speedy trial had been violated. The Superior Court (*Smukler*, J.) denied the motion and the defendant was convicted on all counts. The defendant appeals the denial of this motion. We affirm.

A grand jury indicted the defendant on May 14, 1992. On May 15, 1992, a capias was issued for his arrest. At the time, the defendant resided in Florida. Prior to November 1991, he had been living in Barnstead. In November 1991, the defendant moved to Massachusetts, where he lived until January 1992. He then moved to Virginia, living first in a motel and then in a rented house. He moved to Florida in March 1992. In Florida, he stayed at several different addresses until May 1993, when he returned to Massachusetts. Upon his return, he used his parents' Medford, Massachusetts address as his mailing address and their phone number as his own. In late 1993, he moved to his own home in Medford.

Following the defendant's indictment, the State attempted to locate the defendant in order to apprehend him. The Belknap County Sheriff's Department notified the Barnstead police of the charges against the defendant, entered the defendant's name in the National Crime Information Center (NCIC) database, and requested police in Medford and in Virginia to investigate address

leads. On August 2, 1992, the Belknap County Sheriff's Department contacted the Medford police, sending them a copy of the capias. Though the Medford police stated they would locate the defendant, the residents of the defendant's parents' Medford home reported no police investigation. The Belknap County Sheriff's Department did not contact the Medford police after August 1992, and the State's subsequent efforts to locate the defendant apparently devolved to little more than maintaining his name in the NCIC database. Medford police arrested the defendant for shoplifting on July 17, 1995, and he did not challenge extradition.

On September 18, 1995, the defendant moved to dismiss the pending charges. The defendant argued that, as a result of the State's negligence in attempting to apprehend him, the State violated his rights to a speedy trial under the New Hampshire and United States Constitutions. *See* N.H. CONST. pt. I, art. 14; U.S. CONST. amend. VI. In considering this argument, the superior court applied the balancing test for speedy trial claims developed by the United States Supreme Court in the sixth amendment context in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and adopted by this court for use in the State constitutional context in *State v. Cole*, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978). This test requires a balancing of four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." *State v. Stow*, 136 N.H. 598, 602, 620 A.2d 1023, 1025 (1993).

The trial court concluded that the length of the delay in this case was sufficient to justify review under the remaining *Barker* criteria. *See State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988). The court found that the delay in apprehending the defendant resulted from both the defendant's itinerant lifestyle and the State's search efforts. The court noted that there was "no question that the State could have done more to apprehend the defendant," but that "the delay [on the State's part] was not deliberate and was no more than negligent." The court also found that the defendant did not demonstrate actual prejudice from the delay, and any presumptive prejudice was insufficient to warrant dismissing the charges. In sum, the court ruled that the defendant's right to a speedy trial had not been violated, as he had "not provided the court with sufficient evidence of actual prejudice or reason for delay."

■■ On appeal, the defendant argues that the trial court erred in requiring him to demonstrate actual prejudice to his case in view of the State's efforts to apprehend him. As the Federal Constitution

affords the defendant no greater protection in this instance than the New Hampshire Constitution, we address his argument solely under the latter, referring to federal decisions only as an aid to our analysis. *See State v. Bernaby,* 139 N.H. 420, 422, 653 A.2d 1124, 1126 (1995). In reviewing the trial court's ruling, we defer to the trial court's factual findings unless those findings are clearly erroneous, and consider *de novo* the court's conclusions of law in respect to those factual findings. *See State v. Grant-Chase,* 140 N.H. 264, 267, 665 A.2d 380, 382 (1995), *cert. denied,* 116 S. Ct. 1431 (1996).

■ This court typically has required defendants to demonstrate actual prejudice from a delay to prevail on a speedy trial claim. *See, e.g., State v. Tucker,* 132 N.H. 31, 33, 561 A.2d 1075, 1077-78 (1989). The defendant contends that such a showing is not required here because the State was negligent in apprehending him, and prejudice should be conclusively presumed from the length of the delay. In support of this argument, the defendant relies upon the United States Supreme Court's decision in *Doggett v. United States,* 505 U.S. 647 (1992), the facts and reasoning of which warrant attention.

Marc Doggett was indicted in February 1980 for conspiracy to import and distribute cocaine. *Id.* at 648. Unaware of the charges pending against him, Doggett left the country for Colombia before he could be apprehended. *See id.* at 648-49. After learning that Doggett had been imprisoned in Panama, the Federal Drug Enforcement Administration requested his expulsion to the United States in September 1981. *See id.* at 649. Panamanian authorities apparently freed Doggett in July 1982, and he entered the United States unhindered in September 1982, settling in Virginia. *See id.* For a variety of reasons, Doggett "remained lost to the American criminal justice system" until September 1988, when a credit check revealed his whereabouts. *Id.* at 650. He was arrested in September 1988, eight and a half years after his indictment. *See id.*

Doggett moved to dismiss the indictment, arguing that the government had violated his right to a speedy trial. The federal district court denied the motion; the court accepted a magistrate's recommendation that Doggett had not demonstrated particular prejudice to his case under the fourth factor of the *Barker* analysis. *See id.* The United States Court of Appeals for the Eleventh Circuit affirmed, ruling that notwithstanding the government's "negligence" in attempting to apprehend Doggett, *see United States v. Doggett,* 906 F.2d 573, 579 (11th Cir. 1990), he could not "show either that the first three *Barker* factors weigh heavily in his favor or actual prejudice," *id.* at 582.

The Supreme Court reversed. A majority of the Court was satisfied that the first three factors of the *Barker* analysis weighed in Doggett's favor: the length of the delay was presumptively prejudicial; the government's negligence accounted for the delay; and Doggett could not be faulted for failing to assert his right to a speedy trial given his ignorance of the charges. *See Doggett*, 505 U.S. at 652-54. In evaluating the fourth factor of the *Barker* analysis — whether the accused suffered prejudice from the delay — the majority observed that "consideration of prejudice is not limited to the specifically demonstrable," and "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* at 655. The majority concluded that in view of the finding of negligence on the government's part and the presumptive prejudice attending a delay of more than eight years between indictment and trial, Doggett was entitled to relief. *See id.* at 657-58.

Neither the defendant nor the State disputes that this case turns on the interplay between the second and fourth factors of the *Barker* analysis, the dispositive factors in *Doggett*. We first consider the reason for the delay. Unlike *Doggett*, in which the delay apparently resulted solely from the government's negligence, *see id.* at 652-53, the trial court here noted that though the State could have been more diligent in apprehending him, the defendant's itinerant lifestyle contributed to the delay by making him difficult to locate, *see United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994). Indeed, the court concluded that the State's search efforts were "no more than negligent" — a finding which suggests the court determined that the State's efforts, in fact, may have been somewhat less than negligent.

■ As to the fourth factor of the *Barker* analysis, the trial court found that the defendant did not assert any actual prejudice. When a defendant does not — or cannot — articulate the particular harm caused by delay, we inquire whether the length and reason for the delay weigh so heavily in the defendant's favor that prejudice need not be specifically demonstrated. *See Doggett*, 505 U.S. at 657-58; *see also Nelson v. Hargett*, 989 F.2d 847, 853 (5th Cir. 1993). Though presumptively prejudicial, *see Doggett*, 505 U.S. at 652 n.1, the delay in this instance was substantially shorter than the eight and a half years in *Doggett* and, as discussed above, the State was not solely responsible for the delay. In these circumstances, the defendant's failure to show particular prejudice to his case is fatal to his speedy trial claim. *See United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996); *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993), *cert.*

*denied*, 510 U.S. 1167 (1994); *see also Stow*, 136 N.H. at 604, 620 A.2d at 1026.

*Affirmed.*

All concurred.