Rockingham
No. 97-286

THE STATE OF NEW HAMPSHIRE

v.

KEVIN COTELL

December 31, 1998

276

*Philip T. McLaughlin*, attorney general (*Cynthia L. White*, senior assistant attorney general, by brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J. The State appeals the decision of the Superior Court (*Murphy*, J.) dismissing four indictments against the defendant, Kevin Cotell, to punish the prosecutor for failing to comply with a discovery order. We reverse and remand.

In November and December 1995, a Rockingham County Grand Jury indicted the defendant on two counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (Supp. 1994) (amended 1995, 1997), one count of misdemeanor sexual assault, *see* RSA 632-A:4 (1996), and one count of robbery, *see* RSA 636:1 (1996), in connection with his alleged attack on a woman in August 1995. In a preliminary pretrial order, the superior court scheduled the defendant's trial for April 29, 1996, and directed the parties to complete all discovery by March 1, 1996. The defendant moved for further discovery in April 1996. The court granted the discovery motion in part on April 15, requiring the State to provide some records directly to the defendant and others to the court for *in camera* review. Among the records the court ordered the State to produce were records

relating to the alleged victim held by the division for children, youth, and families (DCYF).

On April 18, the State moved to continue the trial after the prosecutor learned that pertinent DNA testing would not be completed until the end of May 1996. The defendant agreed to the continuance on the condition that the State agree to a bail reduction. The agreement enabled the defendant to post bail after having spent approximately eight months in pretrial incarceration. The trial was rescheduled for August 1996.

Citing the State's failure to comply with the court's April 15 discovery order, the defendant moved in July 1996 to dismiss the case or, alternatively, to compel discovery. The State filed an objection but did not provide the defendant or the court with discovery. On August 8, the court held a hearing on the motion to dismiss or compel discovery, at which the prosecutor admitted he had forgotten about the discovery order. At the hearing, the defendant argued that certain of the alleged victim's DCYF records had been destroyed, and the prosecutor conceded that some of the DCYF records may have been sealed or destroyed. Also, the prosecutor informed the court that the DNA test results would not be available for several months. The defendant asserted that certain records, material for the purpose of impeaching a State witness, had not been provided, and the prosecutor explained that their existence was revealed in a recent deposition and he had already made arrangements for disclosure. Later that day, the court dismissed the indictments against the defendant for the prosecutor's "outrageous and inexcusable" failure to comply with the discovery order. The court further found that

> it is now apparent that some of the records which were to be produced have been destroyed or are otherwise unavailable due to the passage of time, although they had been available up until recently, a situation for which the State must be held fully accountable. It is found and ruled that upon that basis alone, the defendant has been deprived of his right to due process and fair trial.

The State moved for reconsideration, asserting that the complete DCYF file was available for disclosure. The State produced discovery for *in camera* review on August 27 and provided discovery to the defendant on September 3. The State alleged that it had satisfied the April 15 discovery order with these disclosures.

On September 4, the court held a hearing on the State's motion to reconsider. The defendant argued that the State's conduct preju-

diced him under *Barker v. Wingo*, 407 U.S. 514 (1972) (establishing balancing test for speedy trial claims). Specifically, the defendant argued that he spent eight months in jail awaiting a bail reduction, prepared twice for trial and hearings on the dismissal motion, lost sleep, endured emotional trauma, and would be exposed to a jury pool tainted by press releases and press coverage related to the case. Also at the hearing, the court and defense counsel engaged in a discussion in which the court suggested that the State might be able to reindict the defendant.

The court indicated in its order on the State's motion to reconsider that the DCYF records were in fact available for disclosure. The court nonetheless denied the State's motion for reconsideration, ruling that the prosecutor's conduct also violated the defendant's right to a speedy trial. The court noted that "this case [does not] present an isolated incident of noncompliance resulting in dismissal of pending criminal charges." The court also implied in its order that the defendant's right against double jeopardy had not yet attached.

The State moved to clarify whether the dismissal was granted with or without prejudice. The court denied the motion on October 17, refusing to decide an issue that might be presented if the defendant were reindicted. On November 6, 1996, a Rockingham County Grand Jury reindicted the defendant on the previously dismissed charges. The defendant moved to dismiss and the court held a hearing on March 13, 1997. The court, at the hearing, explained its refusal to clarify the effect of the dismissal order: "[T]he term of art, 'with and without prejudice,' was not used . . . by reason of the fact that I thought that fight should be fought another day. That day has arrived." The court ultimately granted the motion to dismiss based on its prior rulings and a finding that information in the materials disclosed for *in camera* review "may be exculpatory and would have had to be disclosed to the defendant in accordance with *Brady v. Maryland*." This appeal followed.

The defendant argues that the State is precluded from challenging the rulings underlying the first dismissal because it did not appeal the denial of its motion to reconsider within thirty days. *See* SUP. CT. R. 3, 7. Assuming the State, in appealing from the second dismissal order, did not timely appeal the dismissal of the first series of indictments, we find good cause under Supreme Court Rule 1 to allow late entry of the appeal. *See State v. Hayes*, 138 N.H. 410, 411, 640 A.2d 288, 289 (1994).

The trial court suggested at the hearing on the State's motion to reconsider that the State might be able to reindict the defendant. In

addition, the court implied in its order on the motion to reconsider that jeopardy had not yet attached. The court then refused to clarify whether the dismissal was with or without prejudice. The State reindicted the defendant approximately three weeks after its motion to clarify was denied. The court explained at the hearing on the defendant's second motion to dismiss that it refused to clarify the effect of the first dismissal because it believed the battle should be "fought another day." The court then based the second dismissal order on the rulings it rendered in connection with the first dismissal.

It would be unjust to preclude the State from challenging the foundation of the dismissal sanction through strict application of our rules because the trial court effectively merged the two dismissal orders by withholding clarification and basing the second dismissal on the factual and legal underpinnings of the first dismissal. The State should not have to protect itself from preclusion, as the defendant suggests, by appealing an order ambiguous as to its finality while simultaneously seeking reindictment. That approach would unfairly burden the State and unnecessarily drain limited prosecutorial and judicial resources.

The State argues that dismissal of the indictments was unjustified because the prosecutor's conduct did not prejudice the defendant. We review the imposition of discovery sanctions for an abuse of discretion. *See State v. LaRose*, 127 N.H. 146, 152, 497 A.2d 1224, 1230 (1985); *State v. Arthur*, 118 N.H. 561, 564, 391 A.2d 884, 886 (1978).

The trial court may impose various sanctions for the prosecution's inexcusable failure to disclose evidence, including, but not limited to, citation for contempt, suspension for a limited time of the right to practice before the court, censure, informing the appropriate disciplinary bodies of the misconduct, and imposition of costs. *Arthur*, 118 N.H. at 564, 391 A.2d at 886. However, "[t]he supervisory authority of the [trial] court includes the power to impose the extreme sanction of dismissal with prejudice only in extraordinary situations and only where the government's misconduct has prejudiced the defendant." *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988). In cases of prosecutorial negligence, the defendant must show that he was actually prejudiced by the prosecutor's failure to comply with a discovery order. *See United States v. Osorio*, 929 F.2d 753, 762-63 (1st Cir. 1991); *United States v. Rossetti*, 768 F.2d 12, 15-16 & n.4 (1st Cir. 1985) (requisite level of prejudice may vary with nature of government's misconduct). Actual

prejudice exists if the defense has been impeded to a significant degree by the nondisclosure. *Cf. United States v. Josleyn,* 99 F.3d 1182, 1196 (1st Cir. 1996), *cert. denied,* 117 S. Ct. 959 (1997); *State v. Theriault,* 590 So. 2d 993, 996 (Fla. Dist. Ct. App. 1991).

Here, the defendant failed to demonstrate actual prejudice to his case. Prejudice was not necessarily established when the court found the defendant's rights to due process and a fair trial were denied by the prosecutor's negligent conduct. The existence of these violations in the discovery context is dependent on proof of substantial prejudice. *See Arthur,* 118 N.H. at 563, 391 A.2d at 886; *United States v. Arcentales,* 532 F.2d 1046, 1049-50 (5th Cir. 1976). The court concluded that the defendant's due process and fair trial rights were compromised on the incorrect ground that DCYF records had been destroyed or sealed. A purported constitutional violation that lacks the essential component of prejudice cannot itself constitute prejudice.

We similarly reject the defendant's argument that the trial court was justified in dismissing the charges after finding that the materials submitted by the State for *in camera* review "may be exculpatory and would have had to be disclosed to the defendant in accordance with *Brady v. Maryland.*" In order to qualify for relief under *Brady v. Maryland,* 373 U.S. 83 (1963), the defendant was required to demonstrate prejudice. *See State v. Colbath,* 130 N.H. 316, 320-21, 540 A.2d 1212, 1214 (1988). Even if the materials were in fact exculpatory, the record does not reveal that the defendant demonstrated that the initial nondisclosure impeded his case.

The record reveals no plausible basis for a finding of actual prejudice. The defendant did not demonstrate that the State's inability to secure DNA test results in time for trial actually prejudiced his case. In simply stating that certain impeachment records had not been provided, and where the prosecutor explained to the court that he had arranged for these recently discovered records to be disclosed, the defendant did not show actual prejudice. The defendant's remaining allegations of prejudice — pretrial incarceration, anxiety, inconvenience, and publicity — were raised in the form of a speedy trial claim and are addressed later in this opinion.

■ In addition, the court failed to consider lesser sanctions and procedural curative measures. For example, the court could have granted the defendant's alternative motion to compel discovery, disciplined the prosecutor, and, if necessary, granted a brief continuance. Upon the prosecutor's compliance, the court could have

assessed the prejudicial effect of the delay as well as the need for further procedural curative measures and/or sanctions. "A [trial] court exceeds the proper bounds of its [supervisory] power to order dismissal of an indictment with prejudice when it fails to consider whether less extreme sanctions might maintain the integrity of the court without punishing the [State] for a prosecutor's misconduct." *Welborn*, 849 F.2d at 985.

This rule acknowledges that the public has an interest in the prosecution of crimes, *see id.; cf. State v. Tucker*, 133 N.H. 204, 208-09, 575 A.2d 810, 814 (1990), and the availability of discretionary discovery sanctions does not "furnish a defendant with a procedural device to escape justice." *Theriault*, 590 So. 2d at 996 (quotation omitted). When a court dismisses charges for prosecutorial negligence, absent actual prejudice and consideration of lesser remedies, the defendant benefits from a "windfall," *see Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988), and "the price is paid by the public, not by the [prosecutor]," *Tucker*, 133 N.H. at 209, 575 A.2d at 814; *see also Theriault*, 590 So. 2d at 996. The sanction of dismissal with prejudice is, therefore, reserved for extraordinary circumstances, *see Welborn*, 849 F.2d at 985, and should not be wielded where a prosecutor, through nonfeasance, vexes the trial judge but has not actually prejudiced the defendant. *See United States v. Dennison*, 891 F.2d 255, 260 (10th Cir. 1989), *cert. denied*, 496 U.S. 937 (1990); *Theriault*, 590 So. 2d at 996.

The record indicates that there may have been prior instances of nonfeasance by the prosecutor's office. If there has been a "consistent pattern and practice of negligent nondisclosure, resulting in actual prejudice to defendants, the court might conclude that government misconduct has reached a level warranting the extraordinary relief of dismissal." *Osorio*, 929 F.2d at 763 (quotation omitted). When the court identifies such a pattern, its resort to dismissal, in lieu of less severe measures, requires a finding that other remedies would not have a deterrent effect. *Cf. Theriault*, 590 So. 2d at 995-96 (dismissal appropriate only where lesser sanction would not accomplish desired result). Furthermore, the misconduct constituting the "last straw" in the pattern cannot be a case of nonfeasance that falls short of actually prejudicing the defendant. *Cf. Osorio*, 929 F.2d at 763.

Although this case does not present circumstances warranting the harshest of penalties, we do not condone the prosecutor's conduct. While "courts should refrain from dismissing charges . . . merely as a device to conform executive conduct to judicially favored norms[,]" *United States v. Houlihan*, 92 F.3d 1271, 1291 (1st Cir.

1996), *cert. denied,* 117 S. Ct. 963 (1997), they should not hesitate to impose proportionate and meaningful sanctions to remedy a prosecutor's failure to comply with a discovery order.

Lastly, the defendant contends that the court's finding of a speedy trial violation provides an independent basis for dismissal of the indictments. *See State v. Hudson,* 119 N.H. 963, 966, 409 A.2d 1349, 1351 (1979). "[W]e defer to the trial court's factual findings unless those findings are clearly erroneous, and consider *de novo* the court's conclusions of law in respect to those factual findings." *State v. Paone,* 142 N.H. 216, 219, 697 A.2d 1390, 1392 (1997).

■ Because the Federal Constitution affords the defendant no greater protection than the State Constitution in this area, we review the trial court's decision under the State Constitution and need not undertake a separate federal analysis. *See State v. Bernaby,* 139 N.H. 420, 422, 653 A.2d 1124, 1126 (1995). To evaluate alleged violations of the constitutional right to a speedy trial, we employ the test developed in *Barker v. Wingo,* 407 U.S. at 530. *See Paone,* 142 N.H. at 218, 697 A.2d at 1392. Four factors are balanced under the *Barker* framework: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *Barker,* 407 U.S. at 530.

At the time of the first dismissal, the lag between the indictments and the rescheduled trial barely exceeded nine months for the sexual assault charges and eight months for the robbery charge. Where a case remains untried for nine months after indictment, we recognize the delay as a signal of presumptive prejudice and inquire into the remaining *Barker* criteria. *Colbath,* 130 N.H. at 319, 540 A.2d at 1213. We, therefore, review whether the delay relative to the sexual assault charges denied the defendant his right to a speedy trial.

The second *Barker* factor requires us to determine the reason for the delay, which here is separable into two periods. The first delay, between the indictments and the initial trial date, was approximately five months and is attributable to the scheduling of the superior court. The record does not reveal that the defendant objected to the trial date, *see State v. Tucker,* 132 N.H. 31, 33, 561 A.2d 1075, 1077 (1989), and the vicissitudes of scheduling do not cut in favor of a defendant to a great degree anyway, *see Colbath,* 130 N.H. at 319, 540 A.2d at 1213; *State v. Langone,* 127 N.H. 49, 54-55, 498 A.2d 731, 735 (1985). The second delay, between the initial trial date and the rescheduled trial date, approximately a four-month

period, is due to the continuance the State obtained after the prosecutor learned that certain DNA test results would not be available before the original trial date. The defendant, however, agreed to the continuance in exchange for the State's assent to a bail reduction, enabling him to post bail. As a general rule, a defendant who agrees or assents to a continuance cannot blame the government for the resultant delay. *See Barker*, 407 U.S. at 536. Accordingly, the reasons for the first delay do not weigh appreciably against the State, and the reasons for the second delay do not weigh at all against the State. We turn to the two remaining *Barker* criteria, upon which we place substantial emphasis. *See State v. Maynard*, 137 N.H. 537, 538-39, 629 A.2d 1345, 1346 (1993).

The third factor, the defendant's assertion of his right to a speedy trial, weighs in favor of the State. The defendant arguably asserted his right at the hearing on the State's motion to reconsider the discovery sanction, approximately ten months after he was indicted and almost one month after he had gained dismissal on other grounds. "The defendant's failure to actively pursue his right to a speedy trial weakens his argument on appeal that he was denied this right." *Maynard*, 137 N.H. at 539, 629 A.2d at 1346.

Here, the defendant must demonstrate actual prejudice from the delay under the final *Barker* consideration. *See Paone*, 142 N.H. at 219-20, 697 A.2d at 1392-93. The defendant argued to the superior court that he was prejudiced by pretrial incarceration, anxiety, inconvenience, and the exposure of prospective jurors to publicity. The defendant's pretrial confinement was eight months in duration due to the negotiated bail reduction. Neither this confinement nor the defendant's anxiety and inconvenience is sufficient to establish actual prejudice. *See Bernaby*, 139 N.H. at 423, 653 A.2d at 1126; *Tucker*, 132 N.H. at 33, 561 A.2d at 1077-78. Pretrial publicity did not actually prejudice the defendant. No publicity was demonstrably connected to the discovery violation, the pretrial publicity's effect on prospective jurors was based on mere speculation, *cf. Maynard*, 137 N.H. at 540, 629 A.2d at 1346-47, and the publicity was not shown to have exceeded that normally endured by criminal defendants, *see Colbath*, 130 N.H. at 320, 540 A.2d at 1214. Consequently, the fourth factor weighs against the defendant.

■ We conclude from the *Barker* analysis that the defendant's right to a speedy trial was not violated.

*Reversed and remanded.*

BRODERICK, J., did not sit; the others concurred.